## SIKES v. TOWN OF MANCHESTER

1. **Cities and Towns:** OBSTRUCTIONS IN STREETS: LIABILITY FOR. A town is not liable for an obstruction in a street unless it be shown that, through its officers, it had notice of the obstruction, or the obstruction had existed so long as to raise a presumption that knowledge thereof was possessed by the town officers; but the fact that a sleigh had stood ten or fifteen minutes in a street will not raise a presumption of such knowledge.

2. ———: ———: WHAT CONSTITUTES AN OBSTRUCTION. A sleigh standing ten or fifteen minutes in a village street for the purpose of unloading goods, ought not to be regarded as an obstruction; and it is not clear that, under any circumstances, a village street would in law be regarded as obstructed by the fact that one-third or one half of it was occupied during the greater portion of the day by the vehicles of farmers, while their teams were feeding at an adjacent stable.

Sikes v. Town of Manchester.

*Appeal from Buchanan Circuit Court.*

THURSDAY, JUNE 15.

ACTION to recover for personal injuries sustained by plaintiff from alleged obstructions allowed in a street of the town. After the evidence was all in, the court directed the jury to return a verdict for defendant for the reason that plaintiff failed to present any evidence upon which defendant can be held liable. There was a verdict and judgment entered accordingly for defendant. Plaintiff appeals.

*E. M. Carr* and *Bronson & LeRoy*, for appellant.

*A. L. Blair* and *Calvin Jordan*, for appellee.

BECK, J.—I. The following agreed statement of facts was submitted by plaintiff to sustain her claim to recover in this case.

"1st. The town of Manchester, defendant, is an incorporated town, legally organized under the laws of Iowa.

"2d. That on the northeast corner of Main and Tama streets, in said town, is the livery stable of the defendant, Marcus Sheldon, said stable extending north on Tama street from Main a distance of 115 feet, and fronting on Main street east, from Tama, 66 feet.

"3d. That Main and Franklin streets are the principal thoroughfares leading to and from said town.

"4th. That Main street is 80 feet in width, and in front of said stable, across its whole front, is a driveway extending into the street a distance of 16 feet, and so constructed on a level with the sidewalk that vehicles can safely be driven from the street into said stable, the driveway acting as a bridge or covering over the gutter.

"5th. That along the north side of Main street, and to the east of said driveway, is a sidewalk extending into the street a distance of 6 feet.

"6th. That said Main street, on both its north and south sides, in front of said barn, was for at least a year next preceding the day plaintiffs received the injuries complained of, used by farmers and others as a place to leave their wagons and sleighs while their teams were feeding in said stable, and such vehicles would occupy from one-third to one-half of the street between the gutters during the greater portion of the day time, different parties so leaving their vehicles on each day.

"7th. That the injuries received by plaintiffs were received on the 1st day of January, 1881, about 4 o'clock in the afternoon of said day.

"8th. That at the time there were two sleds on the south side of said street, opposite the west front door of said stable, both extending lengthwise along Main street, and close to the gutter, and on the north side of said street, and in addition to the sleigh which caused the injury complained of, was a sleigh, the back end of which was about 20 feet east from the east end of the driveway, in front of the stable, the outside of said sleigh being about 15 feet south from the north line of said street.

"9th. That about ten or fifteen minutes before said injuries were received one Wm. Franks, then in the employ of defendant, Marcus Sheldon, backed a sleigh belonging to the said defendant up against the sidewalk on the east side of the driveway in front of said stable, and in the angle between the driveway and sidewalk, the box of said sleigh being nearly north and south, with the tongue turned to the east, lengthwise with the street, and nearly at a right angle with the box, the end of the tongue projecting into the street, about one foot south of the south line of the driveway in front of the stable, or about 17 feet from the north line of said street. That said Franks unhitched the horses from said sleigh, leaving the same in the position above indicated, with the tongue suspended by the middle ring of the neck-yoke, said neck-yoke standing one end on the ground. He

then unloaded the sleigh. The sleigh mentioned in this paragraph is an additional sleigh to those described in paragraph 8, and is the sleigh against which the horse ran, causing the injuries to plaintiffs.

"10th. That the plaintiffs were walking toward said stable from the east, on said sidewalk, and when some 25 or 30 feet east of said stable they saw a runaway horse coming down behind them from the east, in the center of the street, towards the stable; that they walked towards said stable, looking back to see said horse, until they came within 5 or 6 feet of the southeast corner of the stable, when they turned, fronting the south, and stopped and looked toward and at the running horse; that the running horse had the shafts and cross-bar of a cutter attached to him, and as he came down the street, and nearly opposite to where the plaintiffs were standing on the sidewalk, he turned suddenly to the right, toward the sidewalk, and jumped over the tongue of the sleigh described in paragraph 9 hereof, the cross-bar of the cutter catching the tongue and neck-yoke of the sleigh, and with such force as to break the cross-bar and throw about half of it, together with the neck-yoke of the sleigh, against the heads of the plaintiffs, neither the horse or anything attached to him striking them, and the injuries received by plaintiffs were received in this manner.

"11th. That along the north side of said Main street, and immediately east of stable, for a distance of more than 30 feet, there is a tight board fence.

"12. That Main street, in said town, is a well graded street, and when not obstructed can be traveled with safety by teams its whole width between the gutters."

It was shown that Main street was 80 feet wide; the sidewalks to the outer edge of the gutters are 16 feet wide, leaving an open road-way between the gutters of 48 feet. Other evidence was introduced tending to show the nature and extent of plaintiff's injuries and the damages sustained by her. No other evidence was introduced in support of her claim

to recover. Thereupon the court directed the jury to return a verdict for defendant for the reason that upon the undisputed facts no liability of defendant is shown.

We think the instruction is correct and was demanded by the law of the case.

II. The town would not be liable for an obstruction in the street, unless it be shown that, through its officers it had notice of the obstruction, or it had existed so long as to raise a presumption that knowledge thereof was possessed by the town officers. In this case the theory of plaintiff is that the sleigh and its tongue were obstructions which caused plaintiff's injury. Let this be admitted. But there is no evidence tending to show that the town had notice thereof through the knowledge of its officers. The sleigh had been standing at the place for no more than ten or fifteen minutes. It cannot be claimed that this brief time would raise a presumption of knowledge of the obstruction on the part of the town officers. The evidence failed to present a case of liability of the defendant.

III. It appears too that a sleigh standing for ten or fifteen minutes for the purpose of unloading goods, ought not to be regarded as an obstruction to a village street. The streets of a town exists for the very purpose among others of permitting the transportation of goods and the like in vehicles. They, of course, may be unloaded upon the sidewalks. *Haight v. City of Keokuk*, 4 Iowa, 199.

IV. If it be admitted that the fact disclosed by the agreed statement that the street was habitually occupied by farmers' vehicles while their teams were feeding, established an obstruction of the street; yet such obstruction did not cause or contribute to the injuries complained of in this case.

Besides it is not clear that under any circumstances a village street would, in law, be regarded as obstructed by vehicles standing for the purpose, and in the manner, and to the extent discribed in the agreed statement of facts. It is very

certain that it would be well for the towns and villages of
the State to have their streets freely used for such purposes
by farmers who are trading there.   We think it is a common
thing in all the villages of the State.

AFFIRMED.