WILLIAM R. McHARGE et ux. *v.* M. M. NEWCOMER & CO.*

(*Knoxville.*   September Term, 1906.)

1.  **INDEPENDENT CONTRACTOR.** One undertaking to do a
completed job without control or direction as to instrumental-
ities by the proprietor.

Where the occupants of a storehouse contract with an awning
manufacturer, constructer, and repairer to put their awnings
in proper condition for what the job is reasonably worth,
exercising his own judgment as to the means and manner of
doing so, without directions from the proprietors as to how
the repairs should be made and without any control by them
over the instrumentalities to be used in doing the work, such
repairer is an independent contractor, and not a mere servant
. or employee.   (*Post, pp.* 598-604.)

Cases cited and approved:  Iron Co. v. Dodson, 7 Lea, 373, 374;
Powell v. Construction Co., 88 Tenn., 697; Bennett v. True-
body, 66 Cal., 509.

2.  **SAME.** Same. Liability of proprietor for injuries resulting
from fall of awning roller upon a pedestrian during repair-
ment of the awning by an independent contractor.

The repairment of an awning attached to a building over a much
frequented street or sidewalk in a populous city, and at a
place where persons are constantly coming and going and
standing, without any precautions taken to prevent portions

─────────

*As to who are independent contractors, see note to Richmond
v. Sitterding (Va.), 65 L. R. A., 445.

As to liability of employer for negligence of independent con-
tractor when work to be done or the manner of executing it in-
volves a duty on the part of the employer to the public, see note
to Anderson v. Fleming (Ind.), 66 L. R. A., 119.

As to liability of employer for injuries caused by the per-
formance of work by independent contractor which is dangerous
unless certain precautions are observed, see note to Jacobs v. Ful-
ler & Hutsinpiller Co. (Ohio), 65 L. R. A., 833.

McHarge v. Newcomer.

of the awning, materials, or tools from falling on those below, is intrinsically dangerous to the public, and the proprietors are guilty of such negligence as will render them liable for injuries sustained by the fall of an awning roller upon a person passing thereunder during the progress of the work of repairment, though the work was done by an independent contractor. (*Post, pp.* 600, 603-617.)

Cases cited and approved: Chicago v. Robbins, 2 Black (U. S.), 418; Robbins v. Chicago, 4 Wall. (U. S.), 657; Jefferson v. Chapman, 127 Ill., 438; Hawver v. Whalen, 49 Ohio St., 69; Railroad v. Morey, 47 Ohio St., 207; Woodman v. Railroad, 149 Mass., 335; Omaha v. Jensen, 35 Neb., 68; Engle v. Club, 137 N. Y., 100; Elevator Co. v. Anderson, 98 Tex., 156.

3. **NEGLIGENCE.** Presumed from falling of awning or obstruction over street, if unexplained by the erecter and maintainer thereof.

Where one lawfully on a public street of a city is injured by the falling of an awning or other obstruction erected over the street, or some portion of such obstruction, there is a presumption of negligence upon the part of the person maintaining the obstruction which, if left unexplained, is sufficient to support a verdict in favor of the injured plaintiff. (*Post, p.* 617.)

Cases cited and approved: Mullen v. St. John, 57 N. Y., 567; Railroad v. Hopkins, 54 Ark., 209.

4. **MUNICIPAL CORPORATIONS.** Hold streets in trust for the public to be used by it subject to police regulations.

The streets of cities and towns belong to the public, and they are held in trust as easements for it by the municipality where they are located; and the general public have the right to travel upon them, and to transport property through and over them, subject to certain reasonable police regulations. (*Post, pp.* 604, 605.)

Case cited and approved: Humes v. Knoxville, 1 Humph., 403.

McHarge v. Newcomer.

5. **SAME. Same. Use of streets by abutting owners beyond the uses of the general public.**

While abutting owners have some further rights beyond those of the general public in the particular portions of the streets opposite and adjacent to their property or lots for the purpose of ingress and egress, and for light and air, and the temporary use for loading and unloading merchandise, and similar purposes; which use is required by public convenience and necessity, still they have no right to appropriate any portion of a street to their exclusive use in carrying on their business, although sufficient space is left for the use or passage of the public. (*Post, p.* 605.)

6. **SAME. Same. Same. Encroachments upon streets constitute a public nuisance, exceptions.**

Any encroachment upon a street or any obstruction thereon, on or above the surface, of a permanent nature, which endangers or interferes with its use, constitutes a public nuisance; but this rule does not apply to ornamental or shade trees in the sidewalks of streets devoted chiefly to residences, nor to the structures of public service companies, when such structures are authorized by proper authorities. (*Post, p.* 606.)

Cases cited and approved: State v. Stroud (Tenn. Chy. App.), 52 S. W., 697; Wood v. Mears, 12 Ind., 515; Van O'Linda v. Lathrop, 21 Pick. (Mass.), 292; Raymond v. Keesburg, 84 Wis., 302; Sikes v. Manchester, 59 Iowa, 65; Ft. Wayne v. DeWitt, 47 Ind., 391; Welsh v. Wilson, 101 N. Y., 254; Callahan v. Gilman, 107 N. Y., 360; State v. Edens, 85 N. C., 526.

---

FROM KNOX.

---

Appeal in error from the Circuit Court of Knox County.—JOSEPH W. SNEED, Judge.

E. F. MYNATT and LUCKY, SANFORD & FOWLER, for McHarge.

WEBB, MCCLUNG & BAKER, for Newcomer.

———

MR. JUSTICE SHIELDS delivered the opinion of the Court.

This action is brought by the plaintiffs to recover damages for personal injuries sustained by Mrs. McHarge by reason of the falling of an awning roller from the front of a building, in the possession of and occupied by the defendants, M. M. Newcomer & Co., as a store, on Gay street, in the city of Knoxville.

The plaintiffs allege in their declaration that the defendants were engaged in operating a dry goods store, occupying for that purpose a building on Gay street, in the city of Knoxville, and that while Mrs. McHarge was lawfully upon said street, in front of and near the said building, the defendants negligently let fall therefrom an awning, awning frame and roller, striking her upon the head and body, causing serious personal injuries. The defendants plead not guilty. The evidence introduced by the plaintiffs shows that while Mrs. McHarge was lawfully upon the street in front of the defendant's building a heavy awning roller was allowed by a party repairing the awning, in some way not shown, to suddenly fall upon her, inflicting injuries for which she sues. No notice appears to have been given the public that the awning was being repaired, and it was unknown

to Mrs. McHarge before she was struck by the falling roller. The defendants offered no evidence to explain the falling of the roller, but introduced proof to show that the awning was being repaired by one Asa Thomas, an awning maker then engaged in constructing and repairing awnings in the city of Knoxville, as an independent contractor. The defendant M. M. Newcomer upon this subject testified that some two or three days before the accident he employed Thomas to overhaul the second-floor awnings of the store and put them in proper condition; that under the terms of the contract Thomas was to repair the awnings and put them in proper condition within a reasonable time, exercising his own judgment as to the means and manner by which he should do so, and when the work was done to bring in his bill for the job; that he did not know what repairs were required or needed to put the awnings in good shape, and did not give any directions as to how the repairs should be made, or retain any control over the instrumentalities to be used in doing the work; that he contracted for a completed job.

This was all the evidence introduced by the defendants. Upon the conclusion of the testimony, the defendants moved the court to peremptorily instruct the jury to find a verdict for them, because it appeared from the uncontroverted evidence that the injuries sustained by the plaintiff were caused by the negligence of Asa Thomas, an independent contractor, repairing the awning for defendants, and not by the defendants or their

servants, and this motion was sustained, and upon a verdict so found a judgment was entered dismissing plaintiffs' suit. The plaintiffs, their motion for a new trial being overruled, presented and filed a bill of exceptions, to bring the case by appeal in the nature of a writ of error to this court, and assign as error the action of the trial judge in granting peremptory instructions to the jury and dismissing their suit.

There are two errors assigned:

First, that the facts do not make out a case of independent contract; and,

Second, that, if the court holds that Thomas was an independent contractor, this fact constitutes no defense in this case, because the defendants were maintaining an obstruction in a public street, the construction, repair, and continuance of which were necessarily and intrinsically dangerous to the public using the streeet, and they owed to the public a duty to exercise ordinary care at all times to protect every one from any injury resulting therefrom, of which they could not exonerate themselves by the employment of an independent contractor.

We are of opinion that, upon the facts stated, the relation of proprietor and independent contractor did exist between the defendants and Asa Thomas. It fully appears that the defendants contracted with Thomas, who was in the business of making and repairing awnings, to overhaul their awning and put it in good condition, agreeing to pay him therefor what the job was reasonably worth, which included the value of the mate-

McHarge v. Newcomer.

rials furnished, the work to be done upon it, and the skill required in determining and making the necessary repairs. The defendants did not undertake to direct how the work was to be done, but contracted only for the result to be accomplished. Thomas was left to his own judgment and discretion as to the means to be used and the manner and time in which the work was to be done, and was to receive his pay therefor when it was completed and accepted by the defendants. This character of contract is held by all the authorities to create the relation of employer and independent contractor.

In the case of *Powell* v. *Construction Co.*, 88 Tenn., 697, 13 S. W., 691, 17 Am. St. Rep., 925, it is said: "An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to control of his employer, except as to the results of his work. The employer of such a contractor, if he be a fit and proper person, and the work be not in itself unlawful, or a nuisance in itself, or necessarily attended with danger to others, will not be responsible for his negligence, or that of his subcontractors, or of his servants. Mr. Thompson, in his work upon Negligence, says that 'in every case the decisive question is, had the defendant the right to control in the given particular the conduct of the person doing the wrong?'"

Again, in the case of *Iron Company* v. *Dodson*, this court says: "The definition of a contractor, as given in Shearman & Redfield on Negligence, is 'a person who,

in the pursuit of an independent business, undertakes to do specific jobs of work for other persons without submitting himself to their control in respect to the petty details of the work.' The true test, it is said, 'is to ascertain whether one who renders the service does so in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.' 'If he submits himself to the direction of his employer as to the details of the work, fulfilling his will, not merely as to the result, but also as to the means by which that result is to be attained, the contractor becomes a servant in respect of that work.' " 7 Lea, 373, 374.

In *Bennett* v. *Truebody,* 66 Cal., 509, 6 Pac., 329, 56 Am. Rep., 117, it is said: "As a general rule, where a person is employed to perform a certain kind of work, in the nature of repairs or improvements to a building, by the owner thereof, which requires the exercise of skill and judgment as a mechanic, the execution of which is left entirely to his discretion, with no restriction as to its exercise, and no limitation as to the authority conferred in respect to the same, and no provision is especially made as to the time in which the work is to be done, or as to the payment for the service rendered, and the compensation is dependent upon the value thereof, such person does not occupy the relation of a servant under the control of the master, and the owner is not

liable for his acts, or the acts of his workmen, who are negligent and the cause of injury to another."

The rule is also stated by Judge Thompson in these words:

"The general rule is that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work not in itself unlawful, or of such a nature that it is likely to become a nuisance, or to subject third persons to unusual danger, according to the contractor's own methods, and without being subject to control, except as to the results of the work, will not be answerable for the wrongs of such contractor, his subcontractors, or his servants, committed in the prosecution of such work.

"An independent contractor, within the meaning of this rule, is one who renders services in the course of an occupation, representing the will of his employer only as to the result of the work, and not as to the means by which it is accomplished." Commentaries on the Law of Negligence, secs. 621, 622.

The rule is stated in similar language in Elliott on Roads and Streets, sec. 633.

It is also immaterial whether the work contracted for be done by the contractor himself, his servants, or a subcontractor and his employees. The terms of the contract are decisive of the question whether the relation of contractor or servant is created.

The second assignment of error challenges the application of the doctrine of nonliability of the employer for

the negligence of his contractor to the facts of this case.

While the general rule of law is, as stated, that the proprietor or employer is not liable for the negligence of his contractor and the servants and assistants of the latter, yet there are well-established exceptions and limitations to it. These exceptions in general are: Where the act contracted to be done is wrongful or tortious in itself; where the injury is the direct or necessary consequence of the work to be done; where the thing to be done or the manner of its execution involves a duty to the public incumbent upon the proprietor or employer; when the work contracted for is intrinsically dangerous, and the performance of the contract will probably result in injury to third persons or the public; and where the proprietor interferes with the contractor in the performance of the work. Nor does it apply when the work has been completed and accepted. 1 Jaggard on Torts, 231; Commentaries on the Law of Negligence, secs. 645-651.

The question for decision, then, is: Does this case come within any one or more of these exceptions?

A consideration of the rights of the public in the streets of municipalities will aid in the determination of this assignment of error.

The streets of cities and towns belong to the public, and the municipality where they are located holds them in trust for it. This interest of the public is generally defined and held to be an easement. *Humes* v. *Mayor and Aldermen*, 1 Humph., 403, 34 Am. Dec., 657. The

McHarge v. Newcomer.

general public have a right to use these thoroughfares
for all the purposes for which they are condemned, ded-
icated, opened, constructed, and maintained; that is,
they have the right to travel upon them, and to transport
property through and over them, subject to such reason-
able police regulations as the proper authorities may
promulgate for the public convenience, health, morals,
and safety.

Abutting proprietors have some further rights in the
particular portions of the streets opposite and adjacent
to their property or lots; that is, the right of ingress and
egress, of access of light and air, and temporary use
for loading and unloading merchandise, stored or to be
stored on their premises, or used thereon, which use is
required by public convenience and necessity. They also
have the right to construct vaults adjoining their prop-
erty, and lay pipes for the usual purposes under the
surface, subject to proper police regulations, and so as
not to endanger the safety of the public or obstruct
the street. This use of the streets by all parties must be
temporary and reasonable, to be determined upon the
particular facts of the case. No one has the right to
appropriate any portion of a street to his exclusive use
in carrying on his business, although sufficient space for
the use or passage of the public may be left. Thus a
coach may be stopped to receive or discharge passengers,
but the owner cannot occupy the street as a stand, or a
place to conduct his business. The rights of the public
extend to the whole street, not only the entire surface,

but above it. All have the right to use them when not lawfully occupied by others.

And it has been held that any encroachment upon a street or any obstruction therein, on or above the surface, of a permanent nature, which endangers or interferes with its use, is a public nuisance. This, however, does not apply to ornamental or shade trees in the sidewalk of streets devoted chiefly to residences, or to the structures of public service companies, when the latter are authorized by proper authorities. Elliott on Roads and Streets, secs. 613, 690, 693, 695; Dillon on Municipal Corporations, secs. 586, 587, 730, 1032; *Wood* v. *Mears,* 12 Ind., 515, 74 Am. Dec., 222; *Van O'Linda* v. *Lathrop,* 21 Pick. (Mass.), 292, 32 Am. Dec., 261; *Raymond* v. *Keesberg,* 84 Wis., 302, 54 N. W., 612, 19 L. R. A., 643; *Sikes* v. *Manchester,* 59 Iowa, 65, 12 N. W., 755; *Ft. Wayne* v. *De Witt,* 47 Ind., 391; *Welsh* v. *Wilson,* 101 N. Y., 254, 4 N. E., 633, 54 Am. Rep., 698; *Callahan* v. *Gilman,* 107 N. Y., 360, 14 N. E., 264, 1 Am. St. Rep., 831; *State* v. *Edens,* 85 N. C., 526; *State* v. *Stroude* (Tenn. Ch. App.), 52 S. W., 697.

These rights of the public further appear from the duties which municipalities owe in relation to the maintenance of their streets and their liability for negligence in the discharge of those duties.

In *Oliver* v. *Nashville,* 106 Tenn., 277, this court, in a case involving the liability of the city of Nashville for negligence in the repair of one of its streets, through Mr. Justice Wilkes, said: "We are of opinion that the

city is obligated to keep its streets open and safe and in proper condition for their entire width, and any one injured upon any part of the street, by reason of its defective condition, is entitled to damages, provided the party injured is without fault."

Judge Dillon, in his work on Municipal Corporations (section 1013), says: "In connection with the subject of streets and sidewalks may be considered the liability of a municipal corporation for injuries to travelers by reason of falling substances, such as awnings, cornices, snow and ice from roofs, and the like, or by reason of the fall of rotten poles or trees in the streets or public places. Municipal corporations have sometimes been held liable for personal injuries suffered by travelels on the street, sidewalks, and public squares from the fall of dangerous substances. The ground of liability is negligence. The courts have in some cases based the liability on statute provisions respecting keeping streets in repair, or safe and convenient for travel, and in other cases on the duty of the corporation in this regard based upon general principles. On the one ground or the other, it is generally held to be a corporate duty to keep the streets of a city in such repair that they may be safely traveled. The duty is not limited to the roadbed. A permanent wooden awning or roofing, covering the sidewalk of a street, and resting for support upon wooden posts bedded in the street, if insecurely supported, so as to be dangerous to persons using the street, is a defect in the street which

the city is bound to repair. Such a structure made for private purposes, if unauthorized, is an encroachment upon the public street, and a nuisance, which it is the duty of the city officers, after notice, express or implied, of the danger, to remove. If such a structure exists by authority of the city, the city is liable for any defect arising from want of proper supervision, or from negligence in its construction; and in such case there may such liability, although there be no external indication of danger. The power of a city over its streets, as well as the corresponding right of the public to use them in safety, extends upward indefinitely for the purpose of their preservation, use, and enjoyment; and the duty of a city in this respect is commensurate with its power."

The extent of the duty of a municipal corporation to the public, in relation to its streets, is stated by another eminent author in these words:

"The duty to keep the roads and streets safe for passage in the ordinary modes is a comprehensive one, and requires the public corporation upon which it is imposed to use reasonable care to keep them clear from obstruction, and free from holes or excavations which render their use hazardous to one exercising due care. Nor is the duty fully performed by making safe the surface of the way, for cities are liable for negligently permitting unguarded excavations near the line of the road or street, as well as for negligently allowing objects likely to cause injury to be placed upon the way or near the line. So, too, they are liable for negligently suffering

awnings, or structures to project over sidewalks and thus cause injury to those rightfully using the street." Elliott on Roads and Streets, sec. 613.

And again: "It is not necessary, in order to constitute a nuisance, that there should be an actual physical obstruction to the public use upon the surface of the highway; for its use may be rendered as dangerous by objects above the way as by obstructions upon the surface. Thus it is said, in a recent case, that 'the permanent and exclusive use and occupancy of any public street or highway by any person, by the erection or maintenance of any structure on, beneath, or above its surface, which wrongfully obstructs, or may obstruct, such street or highway, is a misdemeanor, punishable as a public nuisance.' In accordance with this doctrine, a bay window in a second story of a house, sixteen feet above the sidewalk, projecting between three and four feet beyond the line of the street, was held a public nuisance, which could not be justified by a city ordinance, and its construction was enjoined. So, a house or a wall suffered to remain in a ruinous condition may become a nuisance; and a permanent wooden awning, erected for private purposes, covering a sidewalk and resting upon posts imbedded in the street, is also a nuisance."

It is not necessary for us to decide in this case whether the city could lawfully permit or allow the defendants to construct and maintain an awning over the sidewalk in front of their store, which contributed to the conven-

117 Tenn—39

ience and comfort of the public, and we do not do so. But we are of the opinion that it was the duty of the city to see that the awning was properly and safely constructed, and kept in good repair, and that it would be liable for a failure to discharge this duty to an injured party.

We also think that the defendants, when they erected the awning, assumed all the obligations of the city to the public, and something more. It was their duty to exercise a high degree of care and diligence in the construction, maintenance, inspection, and repair of the awning, so as to prevent it from obstructing the street, or endangering those using it; and their failure to do so, or to take proper precautions to protect the public at all times from injury in any way growing out of its maintenance or repair, renders them liable for the damages suffered. This was held by the supreme court of the United States, in an action brought by the city of Chicago to recover what it had been compelled to pay by reason of the negligence of a contractor of a property owner in leaving an excavation for a vault in front of his house insufficiently guarded. *Robbins* v. *Chicago,* 4 Wall. (U. S.), 657, 18 L. Ed., 427.

In the case of *Village of Jefferson* v. *Chapman,* 127 Ill., 438, 20 N. E., 33, 11 Am. St. Rep., 139, it is said: "Another exception to the general rule relieving an employer from liability from an injury occasioned by a general contractor is where the party causing the work to be done is under primary obligations imposed by law

to keep the subject-matter of the work in safe condition. The principle upon which this exception is predicated is that where a duty is so imposed the responsibility for its faithful performance cannot be avoided, and that the party under such obligation cannot be relieved therefrom by a contract made with another for the performance of such duty."

In the case of *Hawver* v. *Whalen,* 29 N. E., 1049, 49 Ohio St., 69, 14 L. R. A., 828, it was held that the proprietor of a city lot abutting upon a public street, who made an excavation in the adjacent sidewalk for coal vaults, to be used in connection with the building, was bound to guard it with ordinary care, and this duty could be shifted to an independent contractor employed to construct said vaults. It is there said: "There is much innate justice in the rule of law that declines to permit one who causes the work to be done, the performance of which, though not necessarily injurious to the persons or property of others, yet necessarily creates conditions inimical to their support, to exonerate himself from all duty towards those whom he had thus exposed to danger."

In *Chicago* v. *Robbins,* 2 Black (U. S.). 418, 17 L. Ed., 298, and again reported under the style of *Robbins* v. *Chicago* in 4 Wall. (U. S.), 657, 18 L. Ed., 427, Robbins was held liable for damages sustained by a pedestrian upon the streets of Chicago falling in an area which his contractor had made before a building he was erecting in that city. It is said, in the first opinion in the case:

"Robbins' duty was absolute to see that the area dug under his direction and for his benefit should be safely guarded, and, failing to do so, his liability attached, and the jury should have been told so."

And in the second opinion in the case, delivered by Mr. Justice Clifford, it is said: "The import of the decision of this court, in reversing the former judgment of the circuit court and remanding the case for a new trial, was that the party contracting for the work was liable in a case like the present, where the work to be done necessarily constituted an obstruction or defect in the street or highway which rendered it dangerous as a way for travel and transportation, unless properly guarded or shut out from public use; that in such cases the principal for whom the work was done could not defeat a just claim of the corporation or of the injured party by proof that the work which constituted the obstruction or defect was done by an independent contractor."

There is no difference in principle between these cases and the one under consideration. In the cases cited, the obstruction was made upon the surface of the street; in the one under consideration, it was made and maintained above the surface. The rule applies to all obstructions in streets, whether on the surface, beneath it, or above it.

This case also comes under the other exceptions insisted upon by plaintiffs to the general rule of exemptions from liability for negligence of contractors; that is, that

the work contracted for involved a thing intrinsically dangerous to the public, from which injuries to those using the street were probable and might reasonably be anticipated by the proprietor. This is a well-established exception, and has been frequently applied to cases of this character.

In the case of *Village of Jefferson* v. *Chapman,* supra, where the defendant in error was injured by falling into an excavation which the city had caused to be made through an independent contractor in the streets, and which had been left unguarded, in disposing of the defense of independent contractor, while admitting the general doctrine of nonliability in such cases, it is said: "But there are exceptions to this general rule. One of these exceptions is that where the contract directly requires the performance of a work which, however skillfully done, will be intrinsically dangerous. The principle upon which this exception depends for support is that one who authorizes a work which is necessarily dangerous, the natural consequence of which is an injury to the person or property of another, is justly to be regarded as the author of the resulting injury. . . . The village could not divest itself of its duty to control and supervise the improvements and repairs it directed to be made by making a contract therefor. If the contractor had authority to remove the apron, then the village could reasonably have foreseen the defect created by the contractor. It was bound to know such removal would leave an open ditch, and that an open ditch of the depth and

width of that shown by the evidence across a sidewalk necessarily renders the sidewalk unsafe for night travel, and in such case it was under obligation to the public to see either that guards were provided or that the apron was replaced in such condition as to make it reasonably safe for pedestrians."

In the case of *Woodman* v. *Metropolitan Railway Co.,* 149 Mass., 335, 21 N. E., 482, 4 L. R. A., 213, 14 Am. St. Rep., 427, where a party was injured by an obstruction created by a contractor of the defendant building its road in the streets of Boston, left improperly guarded, and the defense was an independent contractor, the railroad company was held liable upon the ground that it owed a duty to the public to properly guard the work, which it could not escape by the employment of an independent contractor. It is there said: "If the performance of a lawful contract necessarily will bring wrongful consequences to pass unless guarded against, and if, as in the present case, the contract cannot be performed except under the right of the employer, who retains the right of access to the premises, the law may require the employer, at his peril, to see that due care is used to prevent harm, whatever the nature of his contract with those whom he employs."

In the case of *Omaha* v. *Jensen*, 35 Neb., 68, 52 N. W., 833, 37 Am. St. Rep., 432, where the defendant was injured by falling into an excavation being made by an independent contractor for the city, which had been left without proper protection, the city was held liable. The

court said: "The relation between the city and Brandt was clearly that of employer and independent contractor, and the rule is generally that for injuries occurring in the progress of work carried on by parties of that relation the contractor alone is liable; but this liability is limited to those injuries which are collateral to the work to be performed, and which arise from the negligence or wrongful act of the contractor or his agents or servants. Where, however, the work to be performed is necessarily dangerous, or the obligation rests upon the the employer to keep the subject of the work in a safe condition, the rule has no application."

In *Engle* v. *Eureka Club,* 137 N. Y., 100, 32 N. E., 1052, 33 Am. St. Rep., 695, it is said: "There are cases of still another class where the thing contracted to be done is necessarily attended with danger, however skillfully or carefully performed, or, in the language of Judge Dillon, is intrinsically dangerous, in which case it is held that the party who lets the contract to do the act cannot thereby escape from responsibility for any injury resulting from its execution, although the act to be performed may be lawful."

In the case of *Elevator Company* v. *Anderson,* 81 S. W., 282, 98 Tex., 156, 1 L. R. A. (N. S.), 198, it is said: "As we understand it, the general rule is that one having a piece of work done by an independent contractor is not liable for the negligence of the latter; but to this rule there is a well-marked exception. So far as we have seen, the limitation of the rule has been by no one better

expressed than by Judge Dillon. He said: 'The general rule is stated in the preceding section, but it is important to bear in mind that it does not apply where the contract directly requires the performance of a work intrinsically dangerous, however skillfully performed. In such a case the party authorizing the work is justly regarded as the author of the mischief resulting from it, whether he does the work himself or lets it out to contractors.'"

The case of *Ohio Southern Railway Co.* v. *Morey,* 47 Ohio St., 207, 24 N. E., 269, 7 L. R. A., 701, was an action brought by Morey to recover damages for injuries sustained by falling into a ditch which the railroad company in error had caused to be dug through an independent contractor in the town of Washington, and which had been left unguarded. It was there held that the doctrine of nonliability for the acts of an independent contractor had no application to a case where the injury, instead of being collateral and flowing from the negligent acts of the employee alone, is one that might have been anticipated as a direct or probable consequence of the performance of the work contracted for, if reasonable care is omitted in the course of its performance, and that in such case the person causing the work to be done will be liable, though the negligence is that of an employee or an independent contractor.

The awning of the defendants, so far as appears from this record, was being repaired by their contractor, over a much-frequented street, in a populous city, and at a

McHarge v. Newcomer.

place where persons were constantly coming and going and standing, upon the invitation of the defendants, for the purpose of trading with them and taking the street cars, without any precautions taken to prevent portions of the awning, material, or tools from falling on those below. To argue that this was not a thing intrinsically dangerous to the public would be to assert the perfection of mankind and deny the laws of gravity. We think that the plaintiffs made out a case against the defendants, as the record now stands. Where one lawfully on a public street of a city is injured by the falling of an awning or other obstruction erected over the street, or some portion of such obstruction, there is a presumption of negligence upon the part of the party maintaining the obstruction which, if left unexplained, is sufficient to support a verdict in favor of the injured plaintiff. *Mullen* v. *St. John,* 57 N. Y., 567, 15 Am. Rep., 530; *Railroad* v. *Hopkins,* 54 Ark., 209, 15 S. W., 610; 1 Thompson on Negligence, section 1217.

There was an injury sustained by such means in this case, and no explanation attempted. Therefore there was a case presented which the plaintiffs had a right to have submitted to the jury, and it was error to sustain the motion of the defendants for a peremptory instruction to find a verdict in their favor.

Reversed and remanded.