LETHA SEISER, Appellee, v. INCORPORATED TOWN OF REDFIELD, Appellant.

No. 39978.

1036

SEPTEMBER 22, 1930.

REHEARING DENIED FEBRUARY 12, 1931.

*Curtis W. Gregory* and *Howard L. Bump,* for appellant.

*White & Clarke,* for appellee.

GRIMM, J.—The town of Redfield, in Dallas County, Iowa, has a population of approximately 770 people. The main street runs east and west, and is called Thomas Street. There is another street running north and south, on which some business houses are located. On the north side of Thomas Street, which is only a block long, business houses occupy the full block, but on the south side there are stores commencing on the east side of the alley and extending east, and one business house west of the alley, called Towne's store. The accident in controversy happened on the sidewalk in front of Towne's store. The business streets of the town are not paved, but graveled. The sidewalk in controversy is eight feet wide, and runs the full length of the block. There is no curbing, and the edge of the walk is left in a more or less ragged and unfinished condition.

The plaintiff is the wife of Herman Seiser, a farmer, who, at the time of the accident, lived about a mile and a half south of Redfield, where they had lived for about three years. Prior to going on the farm, they had lived in the town of Redfield

for about four months, at a point about one block east and two blocks south of Towne's store, where the accident occurred. While they lived in town, they traded at Towne's store, both for groceries and other merchandise. In testifying on the subject, the plaintiff, in substance, said that she had been in this store, then kept by a man named Keefer, perhaps ten times. She also continued to visit the store after moving onto the farm. She testified she had never seen the hole in the sidewalk which caused the injury.

The defect of which complaint is made is a little difficult of description. At a point directly opposite the middle of the doorway into the front of the Towne store, the edge of the sidewalk, for a distance of approximately 33 inches east and west, had been chipped off and broken in a somewhat rough and irregular manner, and in what approximates, roughly, a triangle, the base of the triangle being what would have been the curb, if one were present. The apex of this triangle extended into the sidewalk, from what we may call the curb line, a distance of approximately 7 or 8 inches. Apparently this breaking away of the edge of the sidewalk was caused by trucks or drays, which backed into it when delivering goods to the Towne store.

On the 27th day of April, 1928, it appears, the plaintiff and a Mrs. Cahow were in Towne's store. The plaintiff's automobile was parked in the street in front of the store, but a few feet west of the store. The ladies came out of the store onto this sidewalk, and started for this automobile. They walked in a northerly direction out of the store door to a point near the north edge of the walk, plaintiff walking on the northeasterly side, or outside, and Mrs. Cahow on the southwesterly, or left, side, as they walked along.

The testimony on behalf of the plaintiff is somewhat contradictory, and not very definite as to just what was done by the plaintiff immediately before and at the time of the accident. At one point in the record it would appear from her testimony that they walked approximately straight north from the door of the store to the broken edge of the sidewalk; while at another point it would appear that, instead of walking straight north to the point where the sidewalk was broken, they walked in a northwesterly direction towards the automobile, to a point mid-

way of the west window of the store, or approximately 6 or 8 feet west of the point where the sidewalk was broken. On reaching a point near the northerly edge of the sidewalk, the plaintiff recalled that she wanted to buy some bread at a store across the street and east from Towne's store. She then turned and started east, in order to get to the crossing at the alley, to cross the street north. In going east, she stepped off the edge of the sidewalk at the place where it was broken off, and received the injuries of which she complains.

I. Assuming, but not deciding, that the defendant was guilty of negligence in maintaining this broken edge of the sidewalk, as described, we pass to the question whether plaintiff was guilty of contributory negligence in her conduct immediately before and at the time of the accident. The sun was shining; it was a clear day late in April. There was no storm, fog, or any other disturbance of the elements. There were no distracting circumstances surrounding the plaintiff. If her mind and attention were occupied just before and at the time of the accident, this was wholly a matter of her own volition and activity. There were no disturbing or distracting agencies from the outside.

If, as appears from a part of the testimony on behalf of the plaintiff, she walked from the front door of Towne's store to a point in close proximity to the broken edge, she must have been going north with the idea of stepping down from the sidewalk onto the graveled portion of the street, and she must have been looking directly at the broken edge of which she complains; or, had she looked, she could easily have seen this broken edge, which was directly in front of her, without any obstruction between her and the said broken edge.

If, as appears from another portion of the testimony on behalf of the plaintiff, she walked in a northwesterly direction, to a point about opposite the middle of the west window of Towne's store, then this broken edge was plainly within the ordinary range of her vision as she passed from the front door of the store to a point near the north edge of the sidewalk, and she must have walked several feet from the point where she turned, before she stepped off the broken edge of the sidewalk, during all of which time the broken edge was in plain view, and almost directly in front of her.

It must be recalled that the top of the sidewalk was several inches higher than the street. One witness places the depth of the gutter at seven or eight inches. At no time while the plaintiff passed from the front door of Towne's store to a point near the edge of the sidewalk, and up to the time she fell off the broken edge, was anyone between her and the point of the accident; nor was she at any time crowded, jolted, or pushed out of the course which she selected for herself, by anyone. While it appears that one or two parties passed along the sidewalk, it is not claimed that they in any manner interfered with the plaintiff's free movement on the sidewalk, or in any manner interfered with her having a plain and unobstructed view of the broken edge of the sidewalk. The plaintiff's eyesight is good, she did not wear glasses, and was only 39 years of age. The plaintiff claims she never saw the broken edge, or, as she calls it, the hole in the sidewalk.

Without unduly extending this opinion, we quote a portion of the plaintiff's testimony in reference to what happened.

"I came out of the store and started *west*. I turned around and started back. I went back to get some things I forgot,—some bread. Mrs. Cahow was with me. I was on the outside, and was *walking east*. After I started east, I caught my foot and fell. That is all." (Writer's italics.)

The plaintiff at one point says:

"I had been in the store, and had come out of the door and *started to go west*. I don't know how many steps I took. I didn't go but a little ways, because I turned right around, and I hadn't any more than gotten turned around and started back until I fell. I didn't start to go across the street when I came out of the store." (Writer's italics.) At another point she says: "I was about *even with the center of the west window* when I concluded to turn around. I was talking to Mrs. Cahow at the time." (Writer's italics.) At another point she says, in speaking of what she did after turning around: "I did not take but *one or two steps* until I fell. I cannot step three feet. I didn't measure my steps. When I turned around, I just took a step or two." (Writer's italics.)

The only other eyewitness to the transaction was her com-

1040 .

panion, Mrs. Cahow. She corroborates the plaintiff in all material matters. She says, among other things:

"After we came out of the store, we first started down the street *west*. Then she turned around. We went just a little way down the street. * * * We were not going across the street to my car. We were going down the street. Then she changed her mind, and we went back the other way. * * * She started to turn around, and then fell." (Writer's italics.)

From the entire testimony of the only two witnesses to the accident, there is no dispute about the fact that the broken edge of the sidewalk, of which complaint was made, was directly north of the center of the front entrance of Towne's store; that there was a wide window in the Towne store, west of the entrance; that the plaintiff and her companion came out of this doorway and started west along the sidewalk; that, after they had gone some distance, the plaintiff thought of the bread, turned around, and started east, going some distance, when she stepped off the broken edge of the sidewalk and received the injury of which she complains.

Was the plaintiff guilty of contributory negligence, as a matter of law? In the case of *McLaury v. City of McGregor*, 54 Iowa 717, the plaintiff brought suit for personal injuries received by falling from the sidewalk into a ditch at the edge of the sidewalk. The ditch had been caused by a freshet, and there was no barrier to prevent falling into it. There was a finding for the defendant. The court said:

"There is no pretense that she could not have followed it [the sidewalk] if she had been attentive. Now it appears to us that, where a person is walking upon a sidewalk as wide as this one, and is in the enjoyment of such degree of light and such eyesight as to be able to discern it, and steps off, by inadvertence or want of attention, and receives an injury, such person cannot be said to be in the exercise of reasonable care. In our opinion, the judgment must be affirmed."

In *Bender v. Incorporated Town of Minden*, 124 Iowa 685, the plaintiff fell into a hole in the sidewalk. On the question of contributory negligence the court said, among other things:

"Counsel suggest that it was impossible for plaintiff to

approach an opening in a sidewalk of the size of the one described without seeing it, and that, if he did not see it, he was guilty of negligence in not doing so. This we think must be so.''

In the *Bender* case, supra, it appears that the plaintiff stood near the hole in question, talking to a companion, and then turned, and fell into the hole. The plaintiff contended that his attention was diverted by his conversation with his companion, and that this was an excuse. The court also said:

''The range of vision is not so limited that one must look directly at a thing in order to see it. Had plaintiff used his senses, either as he approached the opening or while standing within 18 inches of it, he must have seen it. The defect was in plain sight, and might have been seen by the plaintiff, had he been using his eyes.''

Speaking of diversion, the court said:

''If the diversion is self-induced,—that is to say, due to inattention or forgetfulness,—it is manifest that it is not sufficient, and will not excuse; for, if it is due to mental abstraction or heedlessness, it is not a diverting cause. Indeed, we have expressly held that the presence of other parties with whom the injured person is talking is not a diverting cause.''

In *Cutshall v. City of Keokuk*, 185 Iowa 808, the plaintiff was busily engaged in conversation with her companion, but there was nothing to obstruct the view of the obstruction of which complaint was made. The court, in commenting on this phase of the case, said:

''Her mind was occupied with her own affairs. It was not diverted by anything except that which proceeded from her own volition.''

On the question of contributory negligence, the court said:

''This court has gone far to hold cities liable for injuries resulting from defective streets and pavements, but it has never gone so far as to say that it is not the duty of the traveler to exercise ordinary care. * * * we have never said that the pedestrian may abandon the use of his senses entirely, and proceed forward in blind faith that the city has done its duty. We have

said that it is not possible for a city to keep its streets in such a condition, all the time, as to make them entirely free from conditions that may produce accidents. If the city permits defects *to remain in its sidewalks*, and the pedestrian, through no fault of his, is prevented from seeing the defects, whatever they may be, which it is the duty of the municipality to correct, and injury results to him, he is entitled to compensation.''

As previously stated, there was nothing to prevent the plaintiff in this case from seeing the claimed defect in the sidewalk, and there were no distractions except those which proceeded from her own volition, to wit: her conversation with her walking companion.

The appellee lays special stress upon the case of *Howard v. City of Waterloo*, 206 Iowa 1109. In this case there was a defective cement sidewalk; the accident happened at night. In describing the circumstances, the court said:

''While it is shown that there were lights inside of the garage [near the broken sidewalk], and also a street light not far from the place of the injury, yet the plaintiff testifies that she did not see the depression in the walk, nor the protruding slab that tripped her; that she was walking with care, and had plenty of time, was walking slowly, just about as she would anywhere else in town, paying attention to her surroundings, and talking with those with whom she was in company.''

The *Howard* case is clearly distinguishable on its facts from the case at bar. In the *Howard* case, the defect was more or less obscure to the plaintiff. In the first place, it was but a slight rise; the accident occurred in the nighttime, at a place which was dimly lighted, and the plaintiff was shown to have exercised every caution reasonably to have been expected of her. Here we have the broken edge of a sidewalk, seven or eight inches above the street level; it was broad daylight; there were no obstructions, no diversions, and the plaintiff had every opportunity to see the defect. She either saw it or, in the exercise of reasonable diligence, should have seen it.

This case is also distinguishable on its facts from *Greenlee v. City of Belle Plaine*, 204 Iowa 1055. In the *Greenlee* case the accident occurred on account of the depression of a large block in a cement sidewalk, leaving a rise at the edge of the

depressed block, upon which rise the plaintiff tripped and fell. It clearly appears that, in that case, the defect of which complaint was made was more or less obscured by what is described in the opinion as "some padding of cinders and silt," which might very well deceive even a close observer, in the exercise of ordinary diligence.

In the case at bar, the plaintiff was guilty of contributory negligence, as a matter of law, and cannot recover. It follows that the case must be, and is,—*Reversed*.

MORLING, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.