NELLIE C. JEFFERS, Appellee, v. CITY OF SIOUX CITY, Appellant.

No. 43354.

FEBRUARY 20, 1936.

H. C. Harper, J. D. Beardsley, and E. L. Moran, for appellant.

Griffin & Griffin, for appellee.

ANDERSON, J.—The plaintiff claims damages by reason of a personal injury resulting from a fall upon one of the public streets of the city of Sioux City. The street in question is not surfaced and at the point of the accident the level of the street is five or six feet lower than the premises upon which plaintiff's dwelling house is situated. In the year 1933 the city constructed wooden steps from the level of the sidewalk in front of the plaintiff's property down to the level of the street. On March 4, 1935, the plaintiff, in using said steps in going to and returning from a mailbox, fell from near the top of said steps and suffered a severe sprain of her ankle joint and foot, incapacitating her and causing her to suffer severe physical and mental pain, and she seeks in this action to recover as against the city damages resulting therefrom, including doctor and nurse bills, in the sum of $958.50. The trial to a jury in the municipal court resulted in a verdict for the plaintiff for $158.50, upon which judgment was entered and from which this appeal is prosecuted.

The allegation of negligence alleged against the defendant city is that on the date of the accident "and for several weeks prior thereto, the said steps had become weakened and partially decayed by reason of lack of repairs, so that they were not strong enough to support the weight of a pedestrian walking thereon, and that they had sagged out of line so that they were not level, and that on said date and for several weeks prior thereto said steps were dangerous and unsafe"; that the defendant city, through its officers or agents, knew of said unsafe condition of said steps in said street, or in the exercise of reasonable and ordinary care should have known thereof; and that the carelessness and negligence of the defendant city in failing to keep said steps in proper repair and in a reasonably safe condition was the sole and proximate cause of plaintiff's injury.

There is no controversy as to the facts. No evidence was

offered on the part of the city. The record discloses that the city graded the street and did work thereon at various times in its maintenance. The evidence shows that the steps in question had been erected approximately two years prior to the accident, and had been used every day by the plaintiff and members of her family from the time they were erected until the day of the accident. There is no evidence as to the plan of construction of the steps nor as to the material used in their construction. The evidence indicates that the steps were slightly sagged on one side, or not exactly straight or level. There was no evidence of any loosening or deterioration of the steps, and no evidence of any decay or any unsafe condition. It appears that on the day of the accident the plaintiff had passed down the steps on her way to a mailbox, and on her return, when she reached the top step, it gave way at one end and caused her to fall. The plaintiff herself testified that the steps looked safe as they always were. They looked some older by reason of the action of the weather and use, but they looked all right. The plaintiff further testified: ''They were just as good as they always was, I couldn't see much difference, I didn't pay much attention, they looked older was all. I couldn't tell any difference. When I went down the steps I had no trouble. One side of the steps was a little lower at the bottom. I used the steps every day. Sometimes I would go down and back in the forenoon and the same in the afternoon. I used them at least twice a day. They appeared all right, and I thought they were. There was no change in the steps from the time they were constructed to the time of the accident that was apparent except they looked older by reason of the wear and weather. There was nothing about the steps in the least that attracted my attention.''

We have quoted all of the material testimony offered on the part of the plaintiff. It will be noticed that there was no claim on the part of the plaintiff of any fault or negligence in the original construction of the steps, and there is no claim on the part of the plaintiff that the defect complained of was apparent to any person at any time prior to the accident. In fact, there is no evidence that the steps had become out of repair and dangerous for use, other than the fact that one of them gave way at one end and caused the plaintiff to fall. There is absolutely no evidence that the steps ''had become weakened or decayed by reason of the lack of repair,'' as alleged by plaintiff; and there

is absolutely no evidence that the officers of the defendant city knew of any unsafe condition, or that they could have known thereof by the exercise of reasonable and ordinary care, such as is enjoined upon them by the statute. The mere fact that the accident occurred and that the plaintiff was injured, without more, is not sufficient upon which to base a recovery.

The appellee contends that the case of Krska v. Incorporated Town of Pocahontas, 200 Iowa 594, 596, 203 N. W. 39, 40, sustains her claim in the instant case and is controlling, but we cannot agree with this contention. In the Pocahontas case, the injury occurred by reason of the giving way of an iron trapdoor which covered an opening in a concrete sidewalk. The record in that case discloses that the opening was some thirty inches square; that the cover consisted of an iron frame resting on a projection in the concrete to which two iron doors were fastened by hinges about fifteen inches wide and thirty inches long. When closed, the doors were supported by their hinges on the sides and by an angle iron riveted to the sides of the frame upon which the ends of the doors rested. When constructed, there had been an iron bar across the opening supporting the doors in the center, but this had been removed. The hinges were upon the surface of the doors and frame and were rusted. The trapdoor had been installed about seven years prior to the time of the accident. At the time of the accident, the bolt in one of the hinges was found broken, and the other hinge was broken where the bolt went through. It was a rusty break. The angle irons supporting the doors were rusted, and the rivets holding the same were rusted off. For some two months prior to the accident, the doors had become "springy" when stepped on, and the only question in the case was as to whether or not the evidence was sufficient to take the case to the jury upon the question of the city's constructive notice of the defective and unsafe condition of the trap doors. There is no evidence in the case at bar as to any unsafe condition or apparent defect in the steps upon which plaintiff fell. The facts are entirely unlike the facts as disclosed by the record in the Pocahontas case.

In the Pocahontas case, we said:

"The mere existence of a defect in a sidewalk that causes an injury is not alone sufficient to establish the liability of the municipality; but it must, in addition, either be shown that the

city, through its officers, had actual knowledge of the defect, or that it had existed for such a length of time before the accident that, in the exercise of reasonable diligence, they ought to have known of it, a sufficient time before the accident to have permitted its repair, by the exercise of reasonable diligence.''

The above rule has been too long and too consistently adhered to by this court to be disturbed or questioned. Sikes v. Town of Manchester, 59 Iowa 65, 12 N. W. 755; Edwards v. City of Cedar Rapids, 138 Iowa 421, 116 N. W. 323; Cooper v. City of Oelwein, 145 Iowa 181, 123 N. W. 955; Parks v. City of Des Moines, 195 Iowa 972, 191 N. W. 728; Seiser v. Incorporated Town of Redfield, 211 Iowa 1035, 232 N. W. 129, 132; Abraham v. City of Sioux City, 218 Iowa 1068, 250 N. W. 461, 462; Jensen v. Incorporated Town of Magnolia, 219 Iowa 209, 257 N. W. 584.

In the Redfield case, supra, we used the following language:

''We have said that it is not possible for a city to keep its streets in such a condition, all the time, as to make them entirely free from conditions that may produce accidents. If the city permits defects to remain in its sidewalks, and the pedestrian, through no fault of his, is prevented from seeing the defects, whatever they may be, which it is the duty of the municipality to correct, and injury results to him, he is entitled to compensation.''

But the quoted pronouncement assumes, of course, that it does not become the duty of the municipality to correct a defect in a sidewalk or street until it is shown either that it had actual knowledge of the defect or that it had existed for such a length of time before the accident that, in the exercise of the diligence required, the city ought to have known of the existence of the defect and repaired the same.

In the Abraham case, supra, we reannounced the rule governing this class of cases in the following language:

''Section 5945 of the 1931 Code imposes the duty upon a city to care for, supervise, and control all public highways and streets within the city and to keep them open and in repair and free from nuisances. This statute requires the city to exercise reasonable and ordinary care to maintain its streets in a safe condition for travel in the usual and ordinary modes of travel.

However, a city is not required to keep its streets in a condition of absolute safety. It is only required to use ordinary and reasonable care to that end. It does not insure the safety of travelers upon its streets, nor is it required to foresee and provide against every possible accident. It must have actual notice of the dangerous condition of a street, or the condition must have existed for a sufficient time to enable the city to discover and repair the same, in the exercise of reasonable and ordinary care and diligence.''

In the Jensen case, supra, we held that the burden of proving notice to the appellant, actual or constructive, rested upon appellee, and that proof of such notice was essential to a recovery.

At the close of plaintiff's testimony, the defendant moved for a directed verdict based upon the following grounds: That the evidence introduced by the plaintiff wholly fails to prove by a preponderance of the evidence the material allegations of her petition; that the evidence of the plaintiff has wholly and totally failed to show any negligence whatsoever on the part of the defendant, city; that the evidence fails to show actual knowledge on the part of the city of the unsafe condition of the steps, and that the evidence affirmatively shows that the defendant city could not have had knowledge of any unsafe condition, if any had existed, for any length of time prior to the happening of the accident; that the evidence failed to show that at any time prior to the date of the accident the steps were in an unsafe and dangerous condition. This motion was overruled, and after the case was submitted to a jury and a verdict returned for the plaintiff, a motion for a new trial based upon the same grounds as contained in the motion to direct was submitted and overruled, and this appeal is prosecuted from such rulings.

We are constrained to hold that the court erred in its ruling on both of said motions, and on account of such erroneous rulings a reversal must follow.—Reversed.

DONEGAN, C. J., and ALBERT, MITCHELL, KINTZINGER, RICHARDS, and HAMILTON, JJ., concur.