JULIA E. CUTSHALL, Appellant, v. CITY OF KEOKUK, Appellee.

MUNICIPAL CORPORATIONS: Obstructions by Reason of Repairs. A city, in repairing its streets, may, in so far as reasonably necessary, place *plainly visible* obstructions therein, and is not liable for injury to a pedestrian who, in full possession of sight, on a clear day, and, with no diversion of mind except such as is purely voluntary, falls thereover. So held where the obstruction was an ordinary fire hose laid on a smooth walk.

*Appeal from Lee District Court.*—W. S. HAMILTON, Judge.

DECEMBER 14, 1918.

REHEARING DENIED MARCH 20, 1919.

ACTION to recover damages for injuries claimed to have resulted from a fall upon defendant's sidewalk. At the conclusion of plaintiff's evidence, the court directed a verdict for the defendant. Plaintiff appeals.—*Affirmed.*

*Hazen I. Sawyer,* and *Boyd & McKinley,* for appellant.

*T. A. Craig, E. W. McManus,* and *J. R. McManus,* for appellee.

GAYNOR, J.—This action is brought to recover damages for personal injuries alleged to have been sustained by the plaintiff by reason of a fall upon defendant's sidewalk, caused, as she says, by the negligence of the defendant in

permitting the sidewalk to be obstructed at the point where she fell. For a better understanding of the conditions present at the time of the fall, we will say that Main Street runs east and west. Eighth Street runs north and south, and crosses Main Street at right angles. On the east side of Eighth Street, at the intersection of Eighth and Main, is what is known in the record as the undertaking establishment of Hawks and Holbrook. At this place, the sidewalk in 17 feet wide on Main and 14 feet wide on Eighth. It is a smooth, concrete walk. Main Street is one of the principal and main traveled streets in the city. At the time plaintiff fell, and prior thereto, the city was having North Eighth Street paved between Blondeau and Main. Blondeau is north of Main, and runs east and west, paralleling Main. In connection with this paving, water was taken from a hydrant, situated near the outer edge of the sidewalk on Main Street, near Eighth, at a point which would be touched by an extension of the east line of the sidewalk on Eighth. A hose was attached to the outer opening of this hydrant, and then extended in a short circle therefrom, crossing the sidewalk on Main, then out onto Eighth Street, and up to the place where the water was being conducted and used in mixing mortar, for the purpose of laying a concrete foundation for paving that was to be laid thereon. So far as this record shows, the hose was being used at that time in the prosecution of the work of repairing Eighth Street at the point indicated.

It is not material for the purposes of this case how long the hose had been used. It was being then used by the city. The city, therefore, had notice of its location and use, and of the conditions which it·produced. It was being used as an instrument in the repair and betterment of its streets.

Plaintiff, at the time of the injury, was walking with her daughter westward on the north side of Main Street.

Her daughter was walking at her left, next the curbing. They were proceeding towards Eighth. As she came to this hose, she stubbed her toe and fell, and this fall, she says, caused the injury of which she complains. On the morning of the accident, she and daughter had been down town, shopping, and were returning home, about two o'clock in the afternoon. At the time of the accident and prior thereto, she and her daughter were engaged in conversation. She had just been showing her daughter some of her purchases. She was engaged in putting back in her purse whatever article it was that she had taken out of her purse to show her daughter, at the time she fell. She says she did not know the hose was there. She says she didn't see it; that she could have seen it, had she looked. It appears there was nothing to obstruct her view. Though this was a main traveled street, it does not appear that any pedestrians were on the street between her and the hose as she approached. It does not appear that there was any object that intervened between her and the hose at any time for a distance of 80 feet before she reached the point where she said she stumbled over the hose. Her mind was occupied with her own affairs. It was not diverted by anything except that which proceeded from her own volition. She was not attracted or distracted by anything, so far as this record shows.

At the conclusion of all the evidence, the court directed a verdict for the defendant; and from this, plaintiff appeals, claiming that the evidence was sufficient to justify the submission of the case to the jury, both on the question of the negligence of the defendant and the contributory negligence of the plaintiff. Both questions were in the case. We are asked to reverse the case on the ground that the record presented a fair question for the jury, both as to the negligence of the city and the contributory negligence of the plaintiff. The burden rested on the plaintiff to establish negligence on the part of the city, and that, by her own in-

difference to her own safety, she did not contribute to her fall and the injuries consequent thereupon.

It will be noted from what we have said that the city, at the time, was using this hose for a legitimate and lawful purpose. It was repairing its streets. This was an instrument apparently necessary in making the repairs. The record shows that water was necessary in order to mix the concrete that was used in preparing the foundation for the pavement that was being laid. It is not shown that there was any other hydrant within reach of the work that was being done. The hose was used for the purpose of carrying water to the point where the concrete was being mixed. It was laid on the surface of the sidewalk. It was plainly visible. It was laid there for a legitimate and proper purpose. It is not claimed that the streets were being put to a wrongful use, or that the sidewalk itself was out of repair or defective, or that the placing of the hose across the walk created a nuisance. The whole theory of plaintiff's case is bottomed on the thought that it is the duty of the city to keep its sidewalks in a reasonably safe condition for travel for the use of pedestrians who may attempt to use them in the ordinary way; that this hose rendered the sidewalk dangerous and unsafe for travel; and therefore, that the placing of it on the sidewalk was a violation of some duty that the defendant owed to the traveling public.

We have said, over and over again, and emphasized it in the saying, that it is the duty of a city to keep the sidewalks which it has opened for public travel, in a reasonably safe condition, and that it owes a duty of inspection to see that they are so kept. This rule means nothing more than that the city owes a duty in respect to its sidewalks, and to see that they are in a reasonably safe condition for travel by pedestrians.

We will first consider the negligence of the city, as charged. Was the city negligent in permitting this hose to

remain upon its sidewalks for the purpose of carrying water to that point on Eighth Street where the water so carried was used in repairing the street?

Defendant had a right to do this, unquestionably. It had a right to use its streets for the purpose of carrying out those duties which it assumed to the public in the care and maintenance of its streets. The very act of rebuilding or repairing a public highway, in and of itself, necessitates the interference with the ordinary travel upon the street while the repairs are being carried on. The right to use the street for these legitimate purposes inheres in the city, because, without the right, it cannot discharge the duties imposed. Now, then, we take it that it will not be controverted that the city had a right to use so much of its streets as was reasonably necessary for the purpose of doing work to which, at the time, it was devoting its energies. It had a right to use its streets, in so far as was necessary to use them, in the discharge of this duty. It cannot be said that the doing of the thing, in and of itself, constituted an actionable wrong. The wrong, if any, must be found in the manner of the doing. The record is barren of any evidence tending to show that the work that the city was engaged in, could have been performed in any other way. The hose was laid in the open. It was broad daylight. There was nothing to obscure it from the public view, or from the view of travelers upon the street. It would tax one's credulity to believe that a due regard for the safety of the traveling public required that this small hose, while being used for a lawful purpose upon the sidewalk, should be fenced or guarded in order to protect the citizen in the exercise of his right to use the streets. It was plain to be seen, and suggested to a traveler upon the street the danger and hazard that were incident to its position; and the means of avoiding injury from it were just as open as the danger itself. A question very similar to

the one here under discussion was before this court in *Ryan v. Foster,* 137 Iowa 737, in which this phase of the case was considered, but not disposed of. It was intimated, however, in that case, that there could be no liability predicated upon the doing of the thing complained of. See, also, *O'Connell v. City of Davenport,* 164 Iowa 95. We pass that question, however, without determining it definitely at this time, though the writer hereof is of the opinion that no actionable negligence is shown.

This brings us to a consideration of the second proposition: Was the plaintiff guilty of contributory negligence? Did she owe any duty to pay heed or take notice of the condition of the walk before her, as she proceeded on her journey?

It is true that this court has said that it is the duty of the city to keep its sidewalks in a reasonably safe condition for travel; that the pedestrian, in using the sidewalk, has a right to assume that this duty has been performed, and he need not be on the lookout constantly for defects in the street that imperil his journey; that he may assume that the city has performed its duty in keeping the streets in a reasonably safe condition. These rules, so announced by this court, do not mean that one, in traveling upon the streets, may proceed blindly, in the faith that the city has performed its public duty. This court has gone far to hold cities liable for injuries resulting from defective streets and pavements, but it has never gone so far as to say that it is not the duty of the traveler to exercise ordinary care. It has said that the care that should be exercised when the party has ground for believing that peril attended his journey, need not be observed in traveling upon a walk, for the reason that the pedestrian has a right to assume that the municipality has discharged its duty in not permitting defects that imperil the safety of the user to exist in the sidewalk. But we have never said

that the pedestrian may abandon the use of his senses entirely, and proceed forward in blind faith that the city has done its duty. We have said that it is not possible for a city to keep its streets in such a condition, all the time, as to make them entirely free from conditions that may produce accidents. If the city permits defects *to remain in its sidewalks,* and the pedestrian, through no fault of his, is prevented from seeing the defects, whatever they may be, which it is the duty of the municipality to correct, and injury results to him, he is entitled to compensation. But a different question arises where the condition in the sidewalk complained of is one that the city had a right to permit to exist, and is so situated that the objectionable thing can be easily seen and observed by passers-by. Then the burden rests on the party complaining to show that conditions not produced by, and outside of, himself prevented him from seeing the defect, in order to excuse himself from not observing it. If such conditions exist rightfully at the point where the injury occurs, he cannot excuse himself on the theory that "he walked by faith and not by sight." While it may be that he has a right to assume that the city has not left defects in its sidewalks that imperil the safety of a traveler, he has no right to assume that the city may not be using its walks for legitimate purposes, and cannot excuse himself for not observing, on the mere ground that he was then occupied with his own affairs, and was giving no heed to what lay before him. The accident occurred at two o'clock in the afternoon of September 24th, and we will take judicial notice of the fact that one walking directly west, on a 17-foot walk, was not blinded by the sun's rays, or prevented from seeing what was before him, on account of the sunlight.

In *Ryan v. Foster,* supra, this court said:

"Plaintiff's attention was in no manner diverted, and, had she used her eyes, she could not have failed to see it.

[In this case, the hose.]   She either did see it, or was neg·ligent in not seeing it.   If she saw it, and attempted to pass over it, she was negligent; and if she did not see it, as she says, then she was clearly negligent.   Streets and sidewalks may be temporarily obstructed, and the traveler must be on the lookout for such obstructions.   In this respect, the case differs from one where there is a defect in the sidewalk itself.   For this a traveler need not be on the lookout; for he may assume that no defects exist.   But as to proper obstructions the rule is different.   If this were not so, one might blindly walk into an obstruction, and say that he was not obliged to look out for it, and, therefore, was not negligent.   The ·distinction we have pointed out has been recognized in many cases, although, perhaps, not heretofore succinctly stated.   That plaintiff was guilty of such negligence as should defeat recovery, see *Mathews v. City,* 80 Iowa 465; *Bender v. Town of Minden,* 124 Iowa 685; *Barce v. City,* 106 Iowa 426."

See, also, *O'Connell v. City of Davenport,* 164 Iowa 95, and *Lerner v. City of Philadelphia,* 221 Pa. St. 294 (70 Atl. 755).

Upon the whole record, we think the court was right in directing a verdict for the defendant, and the case is—*Affirmed.*

LADD, WEAVER, and STEVENS, JJ., concur.

PRESTON, C. J., dissents.