ELLEN ROPPEL, Appellee, v. CITY OF MOUNT PLEASANT,
Appellant.

No. 39574.

APRIL 5, 1929.

*Max Kinney* and *McCoid, McCoid & McCoid,* for appellant.

*Leo V. Collins* and *F. S. Finley,* for appellee.

FAVILLE, J.—Adams Street in appellant city runs north and
south. The appellee lived on the west side of said street, between
Madison Street to the north and Monroe Street to the south.
Adams Street is paved with a strip of paving about 20 feet wide
in the middle of the street. Between the curb and the sidewalk
is a strip about 11 feet wide, used as a parking, which is in grass.
The sidewalk is approximately 4 feet in width. The lot upon
which the appellee lived is 40 feet wide, north and south. The

house is near the north line of the lot, and there is one lot 40 feet wide between the Roppel property and Madison Street. The south line of the Roppel property is situated about 160 feet north of the north line of Monroe Street. There are two sidewalks, running east and west, leading from the Roppel residence to the sidewalk which runs north and south on the west side of Adams Street. One of these sidewalks leads to the front door of the Roppel house. It is 4 feet wide, and about 11½ feet south of the north line of the lot. The other sidewalk leads to a side door of the Roppel property, and it is 12 or 13 feet south of the other sidewalk. There is no sidewalk leading across the parking to the curb line of the street. There was a street lamp of 100 candle power at the corner of Madison and Adams Streets, and another at the intersection of Adams and Monroe Streets.

The appellee had lived in this house about six months. About four weeks prior to the accident which resulted in appellee's injury, the sidewalk running north and south in front of her home had been repaired by the city. It appears that old cement had been broken up and thrown on the parking, and two piles of the broken fragments of cement had been left there during that period of time. It appears that one of these piles was located about 2½ or 3 feet east of the street sidewalk. This pile was nearly opposite the north line of the sidewalk running to the back of the appellee's house,—that is, the south one of the two sidewalks leading to the house. The other pile of cement was located in the parking opposite the lot north of the Roppel lot.

The appellee is 22 years of age. On the night that the injury occurred, she came home in an automobile, which stopped opposite her house. It was about 10:30 o'clock. It was a dark, rainy night. When the appellee got out of the car, she started to go to the walk leading to the side door, and from the position where the car was located, she went in a general southwesterly direction. In so doing, she passed north of the pile of cement that was on the parking in front of her house, and stumbled and tripped over a piece of cement that was about 2 feet from the larger pile. She caught her toe on this piece, and fell on her knees on the edge of the sidewalk, and struck a 2 x 4 which was along the side of the sidewalk, and received the injury complained of. The piece of cement that she stumbled over was about 4 inches from the sidewalk, and was a three-cornered

piece. She knew that the pile of cement was there, and had been familiar with the situation since the repair of the sidewalk. She had good eyesight. She testified that she had seen the two piles of cement a good many times. The record of part of her cross-examination is as follows:

"Q. And you had in mind on this very night, when you started to cross that parking, that this cement was there on the parking, didn't you? A. Yes, those piles was there. Q. You said you kept away from them, so you must have had it in mind that they were there, or you wouldn't have been keeping away from them, would you? A. No." That the two piles of rock or cement were located as follows: One was just at the edge where a line would be if extended on east from the walk that comes out of the south side of the house, and the other pile was a little to the north, over on the next lot. That, if you went out on a straight line from the front walk leading to the house, one pile of rock was to the south, and the other was to the north. "Q. And if there had been any other, you would have seen it, wouldn't you? A. Well, I never took particular notice. I knew that they were there, and I knew it was dangerous, and I always tried to avoid it. Q. You say you knew it was there? A. Yes, I knew the pile of rock was dangerous, and I attempted to avoid it. Q. How long had you known it was dangerous there? How long had you thought it was dangerous there? A. Well, ever since they left that lantern. Q. For how many days or weeks after they built this was that pile of rock there? A. About four weeks. Q. For four weeks you had that in your mind that the pile of rock was dangerous, and you had known before that night just where the pile of rock was, and you had it in your mind that it was dangerous? A. Yes, sir." That the pile of rock was about 2½ to 3 feet east of the sidewalk running north and south along the west side of Adams Street. That the rock she fell over was north from the pile. That she had come out of the house frequently, facing the parking, in broad daylight. That the rock that she stumbled over was about the size of a lawyer's brief case, excepting that it was three-cornered, and about the thickness of an ordinary cement walk. "Q. You had observed before, as you passed out, that, if you would go from the street in to the sidewalk, as if you were going in the front way, and

that there was nothing on the parking, hadn't you? That there was nothing there at all to prevent you or to interfere with your going straight out? A. So far as I know, there wasn't. Q. As you came out there, and had for some eight weeks, in broad daylight, and looked out toward the street, you had never seen anything that would prevent you from walking out there, that would keep you from going straight out to the street in perfect safety? A. Why, no. If you went out there, you would run on straight out, or went over or around that pile of rock. Q. * * * The pile of rocks was between the two walks, wasn't it? A. Yes. Q. And that was the only thing that you saw there previous to this night that appeared to you dangerous, wasn't it? A. Yes. * * * Q. The particular part of the parking that you started to cross that night was between these two sidewalks,—that is, if you extend a line from the sidewalks to the curbing, you attempted to cross the parking between the two lines, didn't you? A. Yes. But it was just near the sidewalk on the north.''

On redirect examination, the record shows that the witness testified:

''That, at the time that she crossed the parking that night, she had in mind the pile of rock that was there. Witness testified that there were lights at the corner north and at the corner south of the place where she fell, but that the shade of the trees shaded the lights. Witness testified that she had never seen the object that she tripped over before. That there was some dirt piled up between the rock that she tripped over and the rock pile.''

With regard to the situation, the appellee's brother testified:

''Q. You observed that condition every day, didn't you, Mr. Roppel? A. Yes, sir. Q. You observed it on the day that your sister was hurt? A. Yes, sir. Q. And the condition on that day was exactly the same as on the day you saw McMillan? A. Yes, sir. Q. Your sister pointed out to you the rock over which she fell, did she not? A. She did. Q. On the next morning? A. Yes, sir. Q. And that rock had been in the same position ever since the day they put in the walk, had it not? A. Yes, sir. Q. There had been no change in the position of that

rock, had there? A. No, sir. Q. And you had seen the rock a number of times, had you not? A. Yes, sir.''

The foregoing comprises the substance of the material evidence in the case.

The appellant moved for a directed verdict on the ground of the contributory negligence of the appellee. We must construe the evidence in the light most favorable to the appellee. The general rule, oft-repeated by this court, is that the question of contributory negligence is usually one for the jury. It is only when it clearly appears that a plaintiff has been guilty of contributory negligence that the court should so hold, as a matter of law. The rule is well established; the difficulty lies in its application to the facts of any particular case. Each case must be determined upon its own peculiar facts, and citation of authorities is useful mainly as illustrative of the application of the general rule.

Assuming, without deciding, that the appellant was negligent, we are of the opinion that, under the evidence in this case, the appellee was guilty of contributory negligence, as a matter of law, and that the court should have directed a verdict in favor of the appellant. The evidence affirmatively shows that the pile of cement on the parking had been there for about four weeks. The appellee was thoroughly familiar with it, and had in mind that it was dangerous, and attempted to avoid it. Nothing prevented her from going straight west from where she alighted from the car, across the parking to the sidewalk, in perfect safety, and then entering her home by either walk leading thereto. The particular piece of cement ''about the size of a lawyer's brief case'' was lying a short distance north of the main pile. While the appellee testified that she had not seen this particular piece of cement before, the evidence shows that it had been there without change in its position since the repairs had been made on the walk. It was observable to others. The appellee knew there was a dangerous pile of cement there, and sought to avoid it. Due care on her part would have required that she avoid tripping over a part of the cement, even though the particular piece was detached, a short distance from the main pile. By the exercise of proper care she would readily have discovered the piece of

cement over which she fell, and could and should have readily avoided it.

We are of the opinion that the appellee was guilty of contributory negligence, as a matter of law. As bearing somewhat upon the question discussed, see *Gibson v. City of Denison,* 153 Iowa 320; *Reynolds v. City of Centerville,* 151 Iowa 19; *Lundy v. City of Ames,* 202 Iowa 100; *Cratty v. City of Oskaloosa,* 191 Iowa 282; *Cutshall v. City of Keokuk,* 185 Iowa 808.

The judgment is—*Reversed.*

EVANS, STEVENS, MORLING, KINDIG, WAGNER, and GRIMM, JJ., concur.

DE GRAFF, J., concurs in the result, but would predicate the decision upon a failure to prove negligence, as alleged, on the part of the city.