MAGGIE WELLS, Appellee, v. CITY OF OSKALOOSA, Appellant.

No. 40619.

· MARCH 10, 1931.

REHEARING DENIED JUNE 20, 1931.

David S. David, for appellant.

C. C. Orvis, for appellee.

MORLING, J.—We shall assume, without deciding, that negligence on the part of the defendant is shown and shall consider only the question of contributory negligence. The petition and the evidence introduced in support of its allegations are peculiar. It is necessary to note carefully the allegations of the petition and the construction that was placed upon it by plaintiff and the court through application to amend made after the close of the evidence and to note the instruction by which the issue of negligence was submitted to the jury.

The place of plaintiff's fall was a sidewalk in front of a set of two steps rising to a door into a warehouse, called ''a wool house,'' used for the storage of hay, straw and other products. Hay and straw were taken in and out of the warehouse through this door. The building abutted on the south side of the street,

was 30 feet in width. The door and steps mentioned were at the center of the front of the building. The front line of the building was 19 inches and the lower end of the steps five inches south of the sidewalk line. The sidewalk was all cement, about four feet wide, level, not uneven, and not out of repair. The petition alleges that about nine o'clock in the evening as plaintiff "walked past the property and building (described) * * * and while in the exercise of due care on her part and not in knowledge of the condition of the sidewalk, she stumbled and tripped over a step of said building, which step extended over and across on the said sidewalk to the extent of two feet, and the height of about 14 inches above the grade of the said sidewalk, and about 4½ feet in width east and west. That the said defendant had actual knowledge of the obstructions of the said street, and of said sidewalk. And that the said defendant had constructive notice of the existence of said obstruction. * * * That defendant was further negligent in permitting the said sidewalk to become uneven and the defendant allowed a large accumulation of straw, hay, and other refuse to be collected at said steps and out onto said sidewalk, which obstructed travel on said sidewalk, and by reason said steps or stairway, and the rough uneven condition of said sidewalk, was the cause of plaintiff's injuries. That the said defendant negligently permitted the said obstructions of said sidewalk on said street. * * * That said steps described aforesaid, are a part of the building located on said lot aforesaid. * * * That the plaintiff had no knowledge of the said obstruction, or no means of knowledge of the same, and that the said place where she was injured had no lights nor any other warning of its existence; and that the said step was concealed at the time and place of the said injuries hereinafter complained of. That this plaintiff without any negligence upon her part walked into said obstruction on said sidewalk, and that she tripped and fell over the same, causing her to be violently thrown on said sidewalk, and across said obstruction. * * *'' Much evidence was introduced concerning weather conditions and the presence of snow and ice in general and of the "ridgy, rough, uneven and slippery (condition) caused by falling snow, rain and accumulation of hay and straw frozen and by rigs driving up and people traveling across there making it rounded, rough and uneven just in front of the door of the building and up to the steps as shown

in Exhibit A." Exhibit A is a photograph of the street in front of and west of the building showing that the building sits on a foundation of four layers of brick above the surface of the ground; that the steps as stated do not extend to the sidewalk; that some snow or ice was on the street; that in front of the building, and particularly in front of the steps, was an irregular deposit of what appears to be hay, or straw covering most of and extending across the sidewalk in front of the building and rising at the steps to about the level of the top of the three lower layers of brick. The steps are not hidden from view and plaintiff's fall as she marked it on the photograph was in front of the steps and on hay or straw covering the sidewalk. At the conclusion of the introduction of evidence plaintiff sought, but was denied, the right to amend her petition "to meet the proof" by alleging that "the accumulation of hay and straw and other refuse collected on said sidewalk and at said place which obstructed the travel, and was afterwards mixed with melted ice and snow, and the fall of the snow upon said sidewalk immediately in front of said stairway, and that by reason of travel over the same, that the said ice, and snow and straw and other refuse, became rough and ridged and uneven and slippery, and rounded; that the said uneven and rounded condition of said straw and hay, mixed with ice and snow and frozen water said sidewalk at said time of plaintiff's injury, and that by reason thereof, she slipped and fell on said rough, dangerous, rounded and rigid condition of the sidewalk. * * *" The court instructed that the plaintiff must have established "that the defendant was negligent in permitting and allowing accumulations of straw, hay and other refuse to be collected at and onto the sidewalk at the place in question." Plaintiff's testimony is that it was dark at the point where she was passing and if there was a light it was not burning. "The condition of the sidewalk was icy. * * * This building is on the south side of the street. * * * When I got to this ice, when I first noticed it, I was pretty well on top of it. It was high, lumpy and full of ruts and I was wondering how to get across there. I was attempting to pass that place without receiving a fall on the sidewalk. I had not been across it before that winter and did not know anything about the condition of the walk until I arrived there. When I got to the front of the building, I found a lump, a hump up of about two feet of snow

1098

and ice and ridgy and full of holes and ruts in it where water flowed up in there and froze. It was rough, uneven and slippery. * * * I fell at the point where I have marked across on Exhibit A with purple ink. When I came to that humpy place both feet went out from under me and I throwed my arm back. * * * I next saw the place on this sidewalk the next morning. * * * It was in practically the same condition as the night before. The straw and the hay on the sidewalk and accumulations of ice and melted snow was about two feet high in this ridgy place, and was composed of hay, straw and ice frozen together. * * * My eye sight is good. * * * When I left there, (her starting point) I noticed that the sidewalks were covered with snow and ice. It was snow and ice all along and it had been snowing some that day. The lights were all on on the streets up town. * * * There is a light at the corner of D Street and First Avenue and that light was burning. When I got to the wool house, that is where my trouble started. The walks between D Street and this wool house were covered with snow, a kinda icy like snow when it packs down. * * * I observed this humpy place, rough and icy. * * * Q. Now when you were hurt down there, was this straw all over the sidewalk here, as shown in this picture? A. Yes sir. Q. Did it extend east here to the east side of the building? A. It was all along here. Q. All along and all over the side? A. Clear across here. * * * Q. And when you got to a point directly north of the east side of this building, you came to this straw which was on the sidewalk? A. Well, there was straw all along here. It got worse as I got toward the steps. Q. And the straw was two or three feet deep in there? A. Ice and all kinds of rubbish. I did not go very far until my feet slipped out from under me. Q. Well you went from the east side of the building to the place where you indicated? A. Yes sir. * * * Q. Well that building is about 36 feet wide and the door is about in the center of it? A. I don't know whether it is or not. Well possibly it is. Q. So it would be about 18 feet from the place where you went down to the place where you first walked on the straw? Is that correct? A. Well I couldn't say exactly. I know I came across the hay along here, or the straw and then I encountered that high bumpy place. Q. You did walk on the straw for several feet before you fell and went down? A. Yes sir. Q. You knew there was

straw under your feet before you went down did you not? A. Yes sir. Now you could have turned here at this point and went out into the street and back onto the sidewalk without going on the straw could you not? A. Yes, but I was on top of this bump and it was just as bad to turn around as to go ahead. Q. You saw the straw before you stepped onto it? A. Well, that didn't make me scared until I got onto the ice. Q. You got on the straw first and then you continued along on the straw until you got on the ice. Is that it? A. Yes, on this high bumpy place. Q. How far did you travel on the ice before you finally went down? A. Oh not more than a step. I landed here some place. I throwed my arm back and hit those steps. I was lying across the walk. Q. How deep was the straw there at that point where you fell down? A. There was ice and straw all mixed together there. Q. You told the jury on direct examination it was about Two (2) feet thick. A. Well, yes that obstruction was about two (2) feet thick, snow and ice together. The hay was all along there. The hay was pretty well strewed all along about the same height all the way through, as shown by the picture until I got right up on this humpy place, and it was about two feet deep in front of the building, north and south. There was no light in front of the building. There was a light, but it was burned out." There was no other witness to the accident.

It appears, therefore, that the negligence as alleged and as submitted to the jury was in permitting an obstruction of the sidewalk by the accumulation of "straw, hay and other refuse" upon it. The plaintiff's allegation is that she tripped over the step and that she tripped and fell over the obstruction. Her proof is that the obstruction consisted in the accumulation of straw, hay, ice and melted snow and that instead of tripping she slipped. Passing the question of variance, which is not argued, the negligence of the defendant complained of, if any, consisted in permitting the accumulation of "straw, hay and other refuse." It was an obstruction, not a hidden or concealed defect or slippery or otherwise unsafe condition of the walk which constitutes the pleaded basis of the action. She was under no necessity of walking over the obstruction. She could have gone around it. Though plaintiff pleads that she had no knowledge of the obstruction complained of it appears from her own testimony that

she actually saw it and in view and with full knowledge of it instead of turning out she attempted to walk over it. She was attempting to pass without receiving a fall and (so far as the pleaded negligence by obstruction is concerned) she must have appreciated the danger of stumbling over it. Slipping on the ice, a concealed defect is not the case on which she recovered. She was not entitled to assume that an obstruction that she was looking at and conscious of walking over was not there. In knowingly walking over the obstruction she negligently contributed to her stumbling or tripping and falling over it. The case is squarely within Ryan v. Foster, 137 Iowa 737; Gibson v. Denison, 153 Iowa 320; Cutshall v. Keokuk, 185 Iowa 808; Roppel v. Mt. Pleasant, 208 Iowa 117; Seiser v. Incorporated Town of Redfield, 211 Iowa 1035.—Reversed.

FAVILLE, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.