ESTHER E. THOMPSON, Appellee, v. CITY OF SIGOURNEY, Appellant.

No. 40752.

June 20, 1931.

Rehearing Denied October 5, 1931.

Shaw & Yoder and Harry L. Snakenberg, for appellant.

C. J. Lambert, for appellee.

Morling, J.—Jefferson Street in Sigourney runs northward to the residence of plaintiff and her husband, which is east and at the north end of the street. The property belongs to the husband but will be referred to as plaintiff's property or residence. A way continues northwardly from the north end of the street proper and west of plaintiff's premises over the property of the Milwaukee Railroad Company. On the east side of Jeffer-

1350

son Street is a cement sidewalk extending northwardly to the gate to plaintiff's premises, or a little beyond. Along the south line of the plaintiff's property, extending from Jefferson Street eastwardly to Shuffleton Street, is a strip 16 feet in width which for about 20 years before the trial had been used as an alley. It formerly was a part of the property which plaintiff's husband now (but not then) owns. It was acquired by the city in exchange or in substitution for another alley. Plaintiff fell on the walk crossing this alley.

Defendant contends that it did not obtain good title to the alley, and that plaintiff has "an equitable interest in the fee" thereto. The contention is irrelevant. The walk in question extending across the west end of the alley if not a cross walk is a sidewalk. In either event it was defendant's duty to use reasonable care to keep it in repair. See Harrison v. Ayrshire, 123 Iowa 528; Dunn v. Oelwein, 140 Iowa 423; Kircher v. Larchwood, 120 Iowa 578.

Along the east side of Jefferson Street is a ditch which for the alley entrance is provided with a culvert and filling.

The walk across the west end of the alley was in good condition until about five years before the trial when heavy traffic across it broke it up. The north portion of the walk across the alley was entirely removed but broken pieces having elevations of two to five inches above the surface of the drive remained in the southerly portion. On November 28, 1929, (Thanksgiving Day) plaintiff and her husband drove to another town, returning about 6:30 in the evening. During the day about 100 cars had gone over the alley crossing. Plaintiff's husband stopped the car in which they were riding at a point west of the culvert in order that plaintiff might get out with her baby and proceed to their house 50 or 60 feet away. Plaintiff, with her baby, proceeded over the culvert to the walk across the west end of the alley and there fell. She says: "I went down the center of the street there from the culvert and there was a broken uneven surface there and there was a piece of stone lying in the track in that place, I slipped in it and stumbled and fell. * * * It was where there was no walk, where the walk was supposed to be, but there was no walk there and it was an uneven surface there." She says: "I went around that ditch I was along here and came down here to avoid that ditch (Indicating on map). * * * I

avoided this here (Indicating). That there worse part of the ditch there by the electric light pole. * * * I slipped in there and fell on my toe—stumbled over that stone." "I had the baby and I was just going as careful and watching my way. Q. You knew the shape that that broken concrete was in then before the night of the accident, didn't you? A. Yes, I knew it, but I didn't realize it was so bad. Q. You knew the shape it was in though, didn't you? A. Not altogether for I never had noticed it."

The wheel tracks of the vehicles passing into and out of the alley made ruts, the exact condition of which does not appear.

I. The petition alleges that defendant negligently allowed "the sidewalk and crossing to deteriorate, break up into pieces, and to become dangerous and a menace to persons using or attempting to use said crossing, and had allowed surface waters to run across and through said crossing and sidewalk and cut channels of an irregular, uneven, and dangerous angle in said crossing and had negligently failed and refused to repair said sidewalk and crossing in such a way as to render it reasonably safe for the use of the public." Failure to remove snow is not asserted in pleading or evidence as a ground for recovery. Defendant makes a number of contentions on the assumption that negligence is claimed because of failure to remove ice and snow. These contentions misinterpret the theory of the petition and are not well founded.

II. Defendant further contends that there was no sidewalk at the place of the accident and the city was under no obligation to construct one. A sidewalk was maintained on the east side of the street, and for many years at the particular point in controversy. At that point the walk was still open to the public and they were impliedly invited to use it as such. Defendant had permitted it to get out of repair. Defendant's duty was to repair. It is not here charged with duty to construct a walk where none was previously in existence.

III. Defendant offered to prove that the grading fund and improvement fund had been overdrawn since January, 1927. The offer was refused. Defendant had the power of taxation and the duty of using reasonable care to maintain its sidewalks in a reasonably safe condition. Manifestly, it could not avoid

responsibility for breach of this duty by permitting some or all of its funds to be overdrawn.

■ IV. Defendant argues that its motion for directed verdict because of contributory negligence, which was overruled, should have been sustained. Plaintiff was previously informed of the general condition of the walk at the place where she fell. She could not know of the specific condition at the time resulting from the passage of about 100 vehicles over it during the time she was absent. Defendant's argument is that "she could have walked down the north track, which had been made by the cars as they went in and out of the alley and where the snow had been pressed down. Instead of this, however, she chose to walk down the middle of the tracks where the going was necessarily rough and the surface of the ground covered with snow, which hid the rough spots in the alley. The path of the north wheel track would have been closer to her gate, and she could have seen any rough and uneven object, because of the fact that the snow had been packed down. She took a longer route, however, and walked directly into the claimed defect in spite of the fact that she knew exactly where it was." Defendant does not claim that plaintiff should have avoided the dangerous part of the walk by directly crossing the ditch or by traveling over a parking or a terrace outside of the walk. An electric light pole stood there, the condition of which with respect to guy wires or otherwise is not shown. Owing to the traffic of the day the plaintiff could not have known the conditions of the crossing at the time of her return, and owing to the snow would not necessarily see them. The sidewalk was left open for travel. The public were impliedly invited to use it. Plaintiff's knowledge of its unsafe condition did not of itself as matter of law establish contributory negligence. That plaintiff knew of a safer way over which she might pass is not as matter of law established. Whether or not she knew, or should have known, that it was imprudent for her to pass over the walk, whether she was guilty of contributory negligence, was a matter upon which the minds of reasonable persons might fairly differ. Such cases as Wells v. Oskaloosa, 212 Iowa 1095; Seiser v. Redfield; 211 Iowa 1035; Roppel v. Mt. Pleasant, 208 Iowa 117, are not applicable to the facts. This case is ruled by Fosselman v.

Dubuque, 211 Iowa 1213; Templin v. Boone, 127 Iowa 91; Tollackson v. Eagle Grove, 203 Iowa 696.

█ V. Defendant contending that the court erred in the use of the word "may" in the fourth instruction (which we have italicized post) argues "that the word 'may' is indefinite and it in truth imposes no duty at all for if it is used in the instruction complained of the jury need not hold the party to any degree of care"; that in the instruction following relating to the duty of defendant the court charged that "in determining whether a party is guilty of negligence you may take into consideration the location of the cross walk * * * and from these and all other facts and circumstances * * * determine whether or not the defendant was guilty of negligence * * *" Defendant urges that the court thereby imposed upon defendant a stricter standard of reasonable care than that imposed upon plaintiff.

The court told the jury that before plaintiff could recover she must establish: 1. That defendant was guilty of negligence which caused the accident. 2. That she herself was not guilty of any negligence which in any manner contributed to the accident. The court charged in the fourth instruction: "Negligence consists in doing something or omitting to do something which a person of ordinary care and prudence would not have done, or would not have omitted to do under like or similar circumstances. Ordinary care is no fixed or unalterable standard of care but is to be determined by all the facts and circumstances in each particular case, and *may* be in proportion to the character of the act to be done and the magnitude and extent of the injury that may result from the want of proper prudence. The test as to whether a person has exercised ordinary care always is, did she do, or did she omit to do, that which a person of ordinary care and prudence would do, or omit to do, under like or similar circumstances." In the following intsruction the court said:

"In determining whether a party is guilty of negligence, you may take into consideration the location of the crosswalk, the number of persons using said walk, if shown and as shown; whether said crosswalk is in a thickly populated center or otherwise, whether or not said crossing was lighted or otherwise and the proximity of said light to said crosswalk, the condition of

said crosswalk at the point of the accident and from these and all other facts and circumstances as shown by the evidence, determine whether or not the defendant was guilty of negligence in the maintenance of said cross-walk; whether the defendant acted as an ordinary prudent person would have done under like or similar circumstances and conditions, considering that ordinary care upon its part must always be in proportion to the danger that is reasonably to be feared or anticipated.'' In a later instruction the court said that before plaintiff could recover ''she must have satisfied you by a preponderance of the evidence that the defendant was negligent and that it was the defendant's negligence which caused the injuries complained of. * * * 'Negligence' is defined to be the omission to do that which under the same circumstances a person of ordinary prudence would do, or the doing of that which under the same circumstances a person of ordinary prudence would not do. * * * You are instructed that in determining whether or not the plaintiff was guilty of contributory negligence, you may take into consideration the knowledge and means of knowledge of plaintiff of the condition of said crosswalk; the time of day or night of the happening of said accident; whether said crosswalk was lighted, the condition of said walk, whether or not said plaintiff's view was obstructed by reason of objects carried by her; the manner and care as shown, if shown, with which plaintiff approached the crossing; the kind of night, whether the ground was covered with snow or otherwise, as shown, if shown, and all the other facts and circumstances, as shown by the evidence bearing on the question as to whether plaintiff acted as an ordinary prudent person would have done under like or similar circumstances and conditions, considering ordinary care upon her part must always be in proportion to the danger that is reasonably to be feared or anticipated.''

It will be seen that the court used the word ''may'' without discriminating for or against either party in the definition of her or its duty, and with respect to the plaintiff particularly the court plainly told the jury that whether she acted as an ordinary, prudent person ''must'' always be in proportion to the danger. The instructions must be taken as a whole and so read are not misleading nor discriminatory. We are not to be

understood as approving of the indiscriminate use of the permissive word "may" when the mandatory word "must" is proper. Care not to confuse mandatory requirements with merely permissive requirements should in all cases be exercised.

Other exceptions argued do not call for discussion.—Affirmed.

FAVILLE, C. J., and EVANS, STEVENS, ALBERT and KINDIG, JJ., concur.

WAGNER, J., not participating.