# IN THE SUPREME COURT OF IOWA

No. 19–0221

Submitted January 21, 2021—Filed March 19, 2021

**LAURA H. FULPS** and
**CHARLES B. FULPS,**

    Appellants,

vs.

**CITY OF URBANDALE,**

    Appellee.

_____

Appeal from the Iowa District Court for Polk County, Sarah E. Crane, Judge.

An injured pedestrian who fell on an allegedly uneven, damaged, and improperly maintained sidewalk appeals the dismissal of her claim against the municipality. **REVERSED AND REMANDED.**

Mansfield, J., delivered the opinion of the court, in which Christensen, C.J., Waterman, McDonald, Oxley, and McDermott, JJ., joined. Appel, J., filed an opinion concurring specially.

David J. Hellstern (argued) of Sullivan & Ward, P.C., West Des Moines, for appellants.

Thomas M. Boes (until withdrawal) of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, and then Jason C. Palmer (argued) of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

**MANSFIELD, Justice.**

This case requires us again to address the scope of the public-duty doctrine. Cities in Iowa have a statutory and common law duty to build and maintain the public sidewalks in safe condition and for breach of that duty have historically been subject to suit. This historic rule is not at odds with the public-duty doctrine. Generally, that doctrine comes into play when a governmental entity fails to take action (nonfeasance) with respect to a third party—typically by failing to exercise statutory authority with respect to the third party's activity. Such a failure to enforce a statute enacted for the public benefit is considered a breach of a "public duty" and not enough to give rise to a tort action. But defectively constructed or poorly maintained sidewalks are a different matter. There, the governmental entity is simply being held legally responsible for its own property and work.

With these principles in mind, we conclude that a lawsuit brought by an injured pedestrian against a city over a defective city sidewalk should not have been dismissed for failure to state a claim based on the public-duty doctrine. We reverse and remand for further proceedings.

## I. Facts and Procedural Background.

Because this case involves an appeal from the grant of a motion to dismiss for failure to state a claim, we assume the truth of the well-pleaded factual allegations of the petition.

On October 9, 2016, plaintiff Laura Fulps was volunteering for an event held in the Cobblestone Shopping Center located at the corner of 86th Street and Hickman Road in Urbandale. While walking along the 86th Street sidewalk, Fulps fell. The cause of her fall was the condition of the sidewalk: it was uneven, damaged, and improperly maintained. As a

result of the fall, Fulps broke her arm and wrist. She had to have surgery and has sustained temporary and permanent injuries.

On October 8, 2018, Fulps and her spouse sued the City of Urbandale in the Polk County District Court. Fulps's claim was for negligence. Specifically, Fulps alleged the City had failed to properly maintain, repair, and warn about the dangerous, defective, and uneven sidewalk. Fulps sought damages including medical expenses, pain and suffering, and loss of income. Fulps's spouse brought a separate claim for loss of consortium.[1]

In lieu of answering, the City filed a motion to dismiss for failure to state a claim. Citing *Johnson v. Humboldt County*, 913 N.W.2d 256 (Iowa 2018), the City urged that the public-duty doctrine barred Fulps's claims. In her resistance, Fulps responded that a municipality does owe a legal duty to pedestrians to maintain sidewalks.

Following a hearing, the district court entered a ruling on January 25, 2019, granting the City's motion to dismiss. Fulps appealed, and we retained the appeal.

## II. Standard of Review.

We review a district court's summary judgment ruling for correction of errors at law. *Breese v. City of Burlington*, 945 N.W.2d 12, 17 (Iowa 2020). In doing so, "[w]e view the record in the light most favorable to the nonmoving party." *Id.* (alteration in original) (quoting *Deeds v. City of Marion*, 914 N.W.2d 330, 339 (Iowa 2018)). Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Gries v. Ames Ecumenical Hous., Inc.*, 944 N.W.2d 626, 627 (Iowa 2020) (quoting

---

[1]For convenience, we shall refer to the plaintiffs collectively hereafter as "Fulps."

Iowa R. Civ. P. 1.981(3)). The party seeking summary judgment has the burden of establishing that the facts are undisputed and that "party is entitled to a judgment as a matter of law." *Id.* at 628 (quoting *Est. of Harris v. Papa John's Pizza,* 679 N.W.2d 673 677 (Iowa 2004)). "When the facts are undisputed and only the legal consequences are at issue, summary judgment is proper." *Breese,* 945 N.W.2d at 17 (quoting *DuTrac Cmty. Credit Union v. Radiology Grp. Real Est., L.C.,* 891 N.W.2d 210, 215 (Iowa 2017)).

### III. Sidewalks and Public Duties.

**A. Our Precedent Relating to Sidewalks**. Successful lawsuits against municipalities over hazardous sidewalks are nothing new. Somewhat arbitrarily, we will pick up our narrative about one hundred years ago, but we could go further back. In *Howard v. City of Waterloo,* we affirmed a verdict in favor of a pedestrian who stumbled and fell on a defective sidewalk. 206 Iowa 1109, 1110, 1113, 221 N.W. 812, 812, 813–14 (1928). We explained,

> While the city is not bound to maintain perfection in its sidewalks, it is bound to exercise reasonable care to maintain its walks in a reasonably safe condition. It is shown by the record that the defect complained of existed for a period of more than two years prior to the time of plaintiff's injury. It was for the jury to say whether the officers of the defendant city, with the description of the place as given by the plaintiff, of the protruding cement on the rough and jagged edge of the triangular piece resting 1 3/4 inches to 2 1/4 inches above the sunken, broken off portion of the cement block could reasonably have anticipated an injury to some one, exercising due care, such as befell the plaintiff.

*Id.* at 1113, 221 N.W. at 813–14. In *Thompson v. City of Sigourney,* 212 Iowa 1348, 237 N.W. 366 (1931), we again affirmed a verdict in a case where a pedestrian fell on a deteriorated walkway with pieces of concrete, stating, "The walk in question extending across the west end of the alley,

if not a crosswalk, is a sidewalk.  In either event, it was defendant's duty to use reasonable care to keep it in repair." *Id.* at 1350, 237 N.W. at 367.  In *Beach v. City of Des Moines*, also involving a pedestrian's fall on a cracked sidewalk, we reversed a directed verdict for the city.  238 Iowa 312, 313, 26 N.W.2d 81, 82 (1947).  We noted the existence of

> a legislative mandate that cities and towns shall exercise reasonable care to see that their sidewalks are maintained in a reasonably safe condition.  Whether or not they do so maintain them 'is nearly always a question for the jury.'

*Id.* at 336, 26 N.W.2d at 94 (quoting' *Allen v. City of Fort Dodge*, 183 Iowa 818, 821–22, 826, 167 N.W. 577, 578 (1918)).  We added,

> Appellee contends that the defects were so trivial and inconsequential that it owed no duty to repair or remedy them.  The photograph refutes this contention.  If it owed no duty to repair the defects in this sidewalk, then it owed no greater duty with respect to every other sidewalk in every other residential district.  Such conduct on the part of the appellee and its officers would be a flagrant violation of its common law and statutory duty.

*Id.* at 336–37, 26 N.W.2d at 94.

In *Spechtenhauser v. City of Dubuque*, we affirmed a jury verdict against a city in "a sidewalk fall down case."  391 N.W.2d 213, 213 (Iowa 1986) (en banc).  We stated that "sidewalks are a portion of the city street reserved for pedestrian traffic for which the city bears a responsibility of care, supervision, and control." *Id.* at 214–15.

Additionally, there has long been a statute on the books that governs personal injury claims against special charter cities "resulting from defective streets or sidewalks."  Iowa Code § 420.45 (2021); *see also Gleason v. City of Davenport*, 275 N.W.2d 431, 436 (Iowa 1979) (holding that an earlier version of the statute violated equal protection because there was no rational basis for a different time limitation to be mandated for claims against special charter cities as opposed to other

municipalities). The presence of statutory language referring to defective street and sidewalk claims indicates that such claims are available against municipalities.

This principle of municipal liability makes sense given that the city owns the sidewalk. *See Peffers v. City of Des Moines*, 299 N.W.2d 675, 677 (Iowa 1980) ("The abutting owner does not own the sidewalk . . . ."), *superseded on other grounds by* 1984 Iowa Acts ch. 1002, § 1 (codified at Iowa Code § 364.12(2) (1985)). In fact, *Peffers* took note of "the existing state of our case law holding, the city rather than the abutting property owner liable to pedestrians." *Id.* at 679.

This gets us to *Madden v. City of Iowa City*, 848 N.W.2d 40 (Iowa 2014). In that case, a bicyclist fell while riding on a sidewalk in Iowa City and brought a negligence action against the city for failing to maintain the sidewalk in a safe condition. *Id.* at 42. The city filed a cross-petition against the owner of the abutting property (the State of Iowa) seeking contribution based on a city ordinance. *Id.* We affirmed denial of the owner's motion to dismiss the cross-petition. *Id.* at 43.

We noted that Iowa Code section 364.12(2), the successor to the statute involved in *Beach*, provides in part,

> A city shall keep all . . . sidewalks . . . in repair, and free from nuisance, with the following exceptions:
>
> . . . .
>
> (*b*) The abutting property owner is responsible for the removal of the natural accumulations of snow and ice from the sidewalks within a reasonable amount of time and may be liable for damages caused by the failure of the abutting property owner to use reasonable care in the removal of the snow or ice. . . .
>
> (*c*) The abutting property owner may be required by ordinance to maintain all property outside the lot and property lines and inside the curb lines upon the public streets . . . .

*Id.* at 45–46 (omissions in original) (quoting Iowa Code § 364.12(2)).  We further noted that the city had enacted an ordinance requiring abutting property owners to maintain sidewalks in a state of good repair, and free from defects, and providing that the abutting property owner may be liable for damages caused by failure to maintain the sidewalk.  *Id.* at 46.

Walking through the legal analysis, we first concluded that Iowa Code section 364.12(2) does not authorize a sidewalk user to sue the abutting property owner for injuries sustained as a result of a sidewalk defect.  *Id.* at 48.  However, we then found that the same section does not preempt a city ordinance, such as that of Iowa City, making the abutting property owner liable in damages for sidewalk defects.  *Id.* at 50–51.  Yet we did not indicate that such an ordinance would allow the city to avoid direct liability to the sidewalk user.  We held only that the city could obtain contribution or indemnification from the abutting property owner.  *Id.* at 50.  In fact, we quoted from a Montana case stating that

> [w]hen . . . the city by ordinance requires the abutting property owner to keep the sidewalk in repair, the city's duty to the public is not affected; it merely makes the individual a joint agent with the city officials for the performance of the city's duty."

*Id.* (omissions in original) (quoting *Nord v. Butte Water Co.*, 30 P.2d 809, 812 (Mont. 1934)).  Indemnification and contribution would be much ado about nothing if the city were not liable to the sidewalk user.

Urbandale, like Iowa City in the *Madden* case, has adopted an ordinance making the abutting property owner responsible to keep the sidewalk in good repair:

> It is the responsibility of the abutting property owner to repair, replace or reconstruct, or cause to be repaired, replaced or reconstructed, any damaged, defective or broken sidewalks and to maintain in a safe and hazard-free condition

all sidewalks outside the lot and property lines and inside the curb lines or traveled portion of the public street.

Urbandale, Iowa, Code of Ordinance § 99.078 (current through Dec. 31, 2020 local legislation). The ordinance goes on to give the City a right of indemnification "[i]f the abutting property owner does not maintain sidewalks as required and action is brought against the city for personal injuries alleged to have [been] caused by its negligence . . . ." *Id.* § 99.079.

**B. The Public-Duty Doctrine.** While the Iowa Reports and the Northwestern Reporter are chock full of sidewalk cases against municipalities, our court has also recognized a public-duty doctrine. We have discussed that doctrine recently in three cases: *Estate of McFarlin v. State*, 881 N.W.2d 51 (Iowa 2016); *Johnson v. Humboldt County*, 913 N.W.2d 256 (Iowa 2018); and *Breese v. City of Burlington*, 945 N.W.2d 12 (Iowa 2020). That doctrine bars certain negligence claims against governmental entities. We have colloquially explained the doctrine by saying "a duty [owed by the government] to all is a duty to none." *Breese*, 945 N.W.2d at 18 (quoting 18 Eugene McQuillin, *McQuillin on Municipal Corporations* § 53.18, at 268 (3d ed. 2006)). But the colloquialism does not get to the heart of the doctrine and may suggest a broader scope to the doctrine than our cases indicate it actually has. Often, one hopes, the government acts for the benefit of the general public. But the public-duty doctrine generally comes into play only when there is a confluence of two factors. First, the injury to the plaintiff was directly caused or inflicted by a third party or other independent force. Second, the plaintiff alleges a governmental entity or actor breached a uniquely governmental duty, usually, but not always, imposed by statute, rule, or ordinance to protect the plaintiff from the third party or other independent

force. Even then, the existence of a special relationship will negate the public-duty doctrine.

Thus, in *Kolbe v. State*, we concluded that the doctrine precluded a negligence claim against the state for its issuance of a driver's license to a driver with a congenital visual impairment. 625 N.W.2d 721, 729–30 (Iowa 2001) (en banc). The driver struck the plaintiff, severely injuring him. *Id.* at 724. The plaintiff sought recourse against the state, alleging it had negligently issued a license to this driver in breach of statutory and common law duties. *Id.* at 726.

In *Raas v. State*, we applied the public-duty doctrine to claims brought by two individuals who suffered injuries at the hands of a pair of escaped prison inmates. 729 N.W.2d 444, 446 (Iowa 2007). One of the individuals had been attacked while in the parking lot of the state correctional facility, the other later and some distance away. *Id.* The plaintiffs relied on both statutory and common law duties. *Id.* at 447–48. We held that the public-duty doctrine barred the claim of the off-premises victim but that the other victim was an "invitee" on state premises who had sufficiently alleged a special relationship. *Id.* at 450.

In *Estate of McFarlin*, we held that the public-duty doctrine protected the state from a claim brought on behalf of a child killed when the boat he was riding in struck a dredge pipe on Storm Lake. 881 N.W.2d at 63. The dredging operation was being conducted on the lake by a third-party consortium. *Id.* at 53–54, 64 ("It is undisputed the dredge pipe and equipment were owned and operated by local entities, not the State."). The allegation was that the state breached statutory and common law duties to assure the safety of this third-party operation. *Id.* at 56–57, 64.

And in *Johnson*, we held that the public-duty doctrine barred a claim filed against the county after a driver fell asleep, drove off a county road

and into a ditch, and eventually struck a privately owned concrete embankment in the ditch. *Johnson*, 913 N.W.2d at 258–62. In that case, the county was being sued for failure to cause the removal of the embankment from the right of way. *Id.* at 259–60. Again, the plaintiff relied on common law negligence as well as a statute—Iowa Code section 318.4. *Id.* at 259.

Also, in *Sankey v. Richenberger,* we determined that shooting victims could not sue a police chief for an allegedly negligent response. 456 N.W.2d 206, 210 (Iowa 1990). We rejected arguments based on city ordinances and the common law, concluding that neither "imposed a duty upon [the police chief] to control the conduct of [the shooter] to prevent the harm suffered by plaintiffs." *Id.*

Most recently, though, we held that the public-duty doctrine did not shield a city from being sued over an allegedly hazardous and defective bike path that continued onto a sewer box. *Breese*, 945 N.W.2d at 15, 21. We distinguished the case from the foregoing decisions by emphasizing that it involved the city's negligence with respect to the city's own bike path, as opposed to a failure to address a third-party hazard. *Id.* at 19–20. As we explained,

> The City erected the sewer box and the paved pathway and connected them to each other. They were not instrumentalities built, owned, operated, or controlled by anyone else. They were the City's. Here, a jury could find the City was affirmatively negligent in connecting the public pathway to the sewer box to give the sewer box the appearance that it was part of the public trail system. A jury could find that when the City connected the trail and the sewer box, it needed to take measures either to make the sewer box a safe part of the trail by adding guardrails or to warn pedestrians that the sewer box was not part of the public trail system.

*Id.* at 21.

*Breese* clarifies why the public-duty doctrine and suits against municipalities over hazardous sidewalks can coexist. The public-duty doctrine is properly understood as a limit on suing a governmental entity for not protecting the public from harm caused by the activities of a third party. Those third parties have included the visually impaired driver in *Kolbe*, the inmates after they got away from the prison in *Raas*, the dredge operator in *Estate of McFarlin*, the private property owner who put up the concrete embankment in *Johnson*, and the shooter in *Sankey*. *See Breese*, 945 N.W.2d at 21 ("What is clear is that we have generally applied the public-duty doctrine when the allegation is a government failure to adequately enforce criminal or regulatory laws for the benefit of the general public, as in *Raas*, *Kolbe*, and *Sankey*, or a government failure to protect the general public from somebody else's instrumentality, as in *Johnson* and *Estate of McFarlin*.").

**C. Deciding This Case.** In this case, the district court found that the public-duty doctrine "squarely applies." The court stated, "Any duty to maintain the sidewalk imposed by Iowa Code section 364.12 is a general duty to the public." Notably, the district court did not have the benefit of our decision in *Breese*. Instead, with only *Johnson* and its predecessors to guide it, the court took a rather broad view of the public-duty doctrine. Thus, the court observed, "Plaintiffs have not alleged any malfeasance such as erecting an obstacle as opposed to nonfeasance in failing to maintain and repair."

On appeal, the City echoes the district court and argues that it is only being charged with "nonfeasance." It points out that the petition alleges a series of "failures." Thus, the petition asserts that the City failed to properly maintain the sidewalk, failed to properly repair or replace the

uneven portion of the sidewalk, failed to warn of a known danger, and failed to exercise ordinary care.

In the law, words are king, but their reign is not absolute. At least not without context. We explained what we meant by the nonfeasance vs. misfeasance distinction in *Johnson* and *Breese* with a series of quotations from treatises, law review articles, and out-of-state cases. *Johnson*, 913 N.W.2d at 266; *Breese*, 945 N.W.2d at 20–21. We now clarify that "nonfeasance" in the context of the public-duty doctrine does not mean that the City can install a sidewalk and never worry about maintaining it. Unless an exemption in Iowa Code section 670.4 applies, the City is liable for its sidewalk to the same extent a private property owner doing the same thing would be.

The term "nonfeasance" does not encompass ordinary neglect of the same sort of responsibilities a private party might have. *See* Eugene McQuillin, *The Law of Municipal Corporations* § 53:18, at 114 (3d rev. ed. 2013 & Supp. 2020) (characterizing the public-duty doctrine as "a tool used by courts to ensure that governments are not saddled with greater liability than private actors as they conduct the people's business"). This is, after all, the "public duty" doctrine. Instead, the term "nonfeasance" refers to a failure to discharge a *governmental* duty for the benefit of the public—typically, "a government failure to adequately enforce criminal or regulatory laws for the benefit of the general public . . . or a government failure to protect the general public from somebody else's instrumentality." *Breese*, 945 N.W.2d at 21. "Nonfeasance," in other words, means nonfeasance in the performance of a public duty.

There is one other consideration. As we put it in *Johnson*, "Cities, counties, and the state have to balance numerous competing public priorities, all of which may be important to the general health, safety, and

welfare." 913 N.W.2d at 266–67. This rationale, rooted in "the limited resources of governmental entities," has little applicability when the government has the ability to obtain indemnification. *Johnson*, 913 N.W.2d at 266; *see Madden*, 848 N.W.2d at 50.

Fulps's petition alleges, "At all times material to this matter, the section of uneven sidewalk along 86th Street was maintained by the Defendant City of Urbandale." That pleading is sufficient to avoid application of the public-duty doctrine for motion-to-dismiss purposes.[2]

For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

All justices concur except Appel, J., who concurs specially.

---

[2]As in *Breese*, we need not address Fulps's argument that she has a special relationship with the City that would avoid the public-duty doctrine in any event. *See Breese*, 945 N.W.2d at 21.

**APPEL, Justice (concurring specially).**

I concur in the result.

I again express my view, consistent with many jurisdictions that have considered the matter, that the public-duty doctrine is simply a version of sovereign immunity and that the legislature has dealt with the issue through enactment of the Iowa Tort Claims Act, Iowa Code chapter 669, and the Iowa Municipal Tort Claims Act, Iowa Code chapter 670. A leading treatise cites ten jurisdictions rejecting the doctrine on this ground. *See* 18 Eugene McQuillin, *McQuillin Municipal Corporations*, § 53.18 n.44, at 268–69 (3d. ed. 2013) [hereinafter McQuillin] (citing *City of Kotzebue v. McLean*, 702 P.2d 1309, 1312 (Alaska 1985) ("The arguments used to defend the public duty doctrine are the same arguments raised in defense of general sovereign immunity. . . . to allow the public duty doctrine to provide governments with special protection 'would create immunity where the legislature has not.' " (quoting *Adams v. State*, 555 P.2d 235, 242 (Alaska 1976))); *Leake v. Cain*, 720 P.2d 152, 160 (Colo. 1986) (en banc) ("[W]hether or not the public duty rule is a function of sovereign immunity, the effect of the rule is identical to that of sovereign immunity. Under both doctrines, the existence of liability depends entirely upon the public status of the defendant. . . . we reject the public duty rule in Colorado. Henceforth, for purposes of determining liability in a negligence action, the duty of a public entity shall be determined in the same manner as if it were a private party."); *Com. Carrier Corp. v. Indian River Cnty.*, 371 So. 2d 1010, 1015 (Fla. 1979) ("[I]t is clear that the [public-duty] doctrine is a function of municipal sovereign immunity and not a traditional negligence concept which has meaning apart from the governmental setting. Accordingly, its efficacy is

dependent on the continuing vitality of the doctrine of sovereign immunity. If this be so, does the [public-duty] doctrine survive notwithstanding the enactment of [the statue waiving sovereign immunity]? We think not."); *Jean W. v. Commonwealth*, 610 N.E.2d 305, 312–13 (Mass. 1993) (Liacos, C.J., concurring) ("By recognizing that the public duty rule is incompatible with the [Tort Claims] Act, we align ourselves with most jurisdictions that have squarely considered the issue. . . . Those courts that abolished the rule in the immediate wake of the abrogation of sovereign immunity relied on the fundamental inconsistency between the two principles."); *Gonzales v. City of Bozeman*, 217 P.3d 487, 501 (Mont. 2009) (Nelson, J., dissenting) ("It is inappropriate for this Court, by judicial fiat, to effectively immunize governmental entities for their torts and those of their employees when the Constitution and the Legislature have expressly stated that such immunity does not exist except as specifically provided by the Legislature. Notably, many other courts, as well as other members of this Court, have likewise recognized that the public duty doctrine cannot survive the abrogation of governmental immunity."); *Brennan v. City of Eugene*, 591 P.2d 719, 407, 411 (Or. 1979) (en banc) (stating that "[v]irtually all government activities have their ultimate source in some legislative enactment, and to adopt [the public-duty doctrine] would, in effect, restore the doctrine of sovereign immunity, which has been abolished by statute" and that "any distinction between 'public' and 'private' duty is precluded by statute," and concluding that "[i]n abolishing governmental tort immunity, the Legislature specifically provided for certain exceptions under which immunity would be retained, and we find no warrant for judicially engrafting [the public-duty doctrine] onto the statute" (citation omitted)); *O'Brien v. State*, 555 A.2d 334, 336–37 (R.I. 1989) (stating that while the public-duty doctrine "does not

resurrect the concept of sovereign immunity . . . it does take into account the unquestionable fact that many activities performed by government could not and would not in the ordinary course of events be performed by a private person at all," but when the activity could have been carried out by a private person, liability will attach when traditional tort principles are violated); *Hudson v. Town of E. Montpelier*, 638 A.2d 561, 567–68 (Vt. 1993) ("[M]unicipal immunity has been limited in Vermont by the governmental-proprietary distinction, and by [a statute], which waives a municipality's sovereign immunity to the extent of its insurance coverage. Moreover, conventional tort principles and the doctrine of qualified official immunity offer some protection to municipal employees. . . . We decline to adopt the confusing and inconsistent public duty doctrine as a means of limiting the liability of government employees who are already protected to some extent by the doctrine of qualified official immunity, or as a means of addressing the discrepancy between the statutory protection afforded to state and municipal employees in Vermont." (footnote omitted) (citation omitted)); *Coffey v. City of Milwaukee*, 247 N.W.2d 132, 137–39 (Wis. 1976) (stating that "[o]n the issue of duty, [the abrogation of sovereign immunity] did not create any new liability for a municipality; what it did was remove the defense of municipal immunity from tort liability," and if the court adopted the public-duty doctrine, "it would be inconsistent with past decisions . . . in the area of municipal liability for tort," therefore holding that "[a]ny duty owed to the public generally is a duty owed to individual members of the public"); *Natrona Cnty. v. Blake*, 81 P.3d 948, 954 (Wyo. 2003) ("The public-duty/special-duty rule was in essence a form of sovereign immunity and viable when sovereign immunity was the rule. The legislature has abolished sovereign immunity in this area. The public duty only rule, if it ever was recognized in Wyoming, is no longer viable.")).

Many of these cases specifically reject the claim that abandoning the public-duty doctrine would lead to "massive liabilities," noting that other tort doctrines will adequately limit municipal liability. McQuillin § 53.18 n.46, at 269 (citing *Adams v. State*, 555 P.2d 235, 242 (Alaska 1976) (stating that the concerns that abolishing the public-duty doctrine will lead to the state being "liable in tort to everyone for every action" is easily dealt with through the traditional concept of duty which "limits the class of people who may seek to hold the state responsible for negligent action"); *Leake*, 720 P.2d at 160 ("The fear of excessive governmental liability is largely baseless in view of the fact that a plaintiff seeking damages for tortious conduct against a public entity must establish the existence of a duty using conventional tort principles, such as foreseeability, in the same manner as if the defendant were a private entity. Another hurdle the plaintiff must surmount in order to recover is proof of proximate cause. The traditional burdens of proof tied to tort law adequately limit governmental liability without resort to the artificial distinctions engendered by the public duty rule." (citation omitted)); *Jean W.*, 610 N.E.2d at 307 (Liacos, C.J., concurring) ("Although some of the Justices previously have expressed concern regarding the fiscal consequences of abolishing the public duty rule, further experience and reflection lead us to conclude that the limitations on liability imposed by the Legislature in the Act, coupled with the requirement that a plaintiff prove each of the traditional elements of negligence, provide adequate protection to the public fisc."); *Beaudrie v. Henderson*, 631 N.W.2d 308, 313–14 (Mich. 2001) (holding that the rationale of the public-duty doctrine to limit unreasonable liability can be protected by traditional tort law principles, for example "a plaintiff must show some common-law duty owed to him by the public employee" rather than a general duty the

employee owes to the public at large); *Gonzales*, 217 P.3d at 504 (Nelson, J., dissenting) ("Concerns over excessive liability are overstated. For one thing, the public duty doctrine is not the only protection municipalities have against massive liabilities. Moreover, the underlying purposes of the doctrine are better served by the application of conventional tort principles and the protection afforded by statutes governing sovereign immunity." (citation omitted)); *Doucette v. Town of Bristol*, 635 A.2d 1387, 1390–91 (N.H. 1993) ("Our decision does not add causes of action, nor, we believe, does it significantly increase the potential liability of municipalities. . . . We expect that proof of negligence will continue to be a sufficient test of claims against cities and towns to separate worthy suits from those without merit. As has long been our preference, we leave it to the legislature to enact appropriate measures to protect municipalities, if necessary."); *Hudson*, 638 A.2d at 566 ("[C]ourts have stressed that concerns over excessive government or public employee liability are baseless considering the limitations on liability afforded by conventional tort principles, various types of official immunity, or exceptions to waivers of sovereign immunity.")).

In Iowa, the legislature had provided fourteen exceptions to the waiver of sovereign immunity. *See* Iowa Code § 669.14 (2017) (listing fourteen exceptions).[3] And, over my dissent, the court has gone beyond what the legislature has done and layered over the legislatively created exceptions a judicially invented doctrine of qualified immunity, thereby creating a fifteenth exception to liability. *See Baldwin v. City of Estherville*, 915 N.W.2d 259, 279–81 (Iowa 2018). There is no need for a judicially created sixteenth exception entitled the "public-duty doctrine."

---

[3]Two more exceptions have since been added by 2018 Iowa Acts ch. 1126, § 1, and 2020 Iowa Acts ch. 1027, § 2.

That said, this case and our earlier case of *Breese v. City of Burlington*, 945 N.W.2d 12 (Iowa 2020), have joined another line of public-duty cases that, while not abandoning the public-duty doctrine altogether, have narrowed its scope. Though they do not go far enough, these cases nonetheless represent a welcome development and brings our law closer to the legislative directive that government actors should generally be held liable for its torts to the same extent as private parties. *See* Iowa Code chs. 669, 670.